Peter **MILLS** et al., Plaintiffs,

v.

**BOARD OF EDUCATION OF the DISTRICT OF COLUMBIA et al.,**
**Defendants.**

**Civ. A. No. 1939–71.**

United States District Court,
District of Columbia.

Aug. 1, 1972.

Julian Tepper and Stanley Herr, NLADA, National Law Office, Patricia M. Wald, Washington, D. C., and Paul R. Dimond, Cambridge, Mass., for plaintiffs.

C. Francis Murphy, Corp. Counsel, D. C., John A. Earnest, and Stephan Shane Stark, Asst. Corp. Counsels, Washington, D. C., for defendants.

Ralph Wolff and G. Dan Bowling, Washington, D. C., for defendant Charles I. Cassell.

John M. Newsome, Washington, D. C., Sp. Counsel for defendant John L. Johnson.

## MEMORANDUM OPINION, JUDGMENT AND DECREE

WADDY, District Judge.

This is a civil action brought on behalf of seven children of school age by their next friends in which they seek a declaration of rights and to enjoin the defendants from excluding them from the District of Columbia Public Schools and/or denying them publicly supported education and to compel the defendants to provide them with immediate and adequate education and educational facilities in the public schools or alternative placement at public expense. They also seek additional and ancillary relief to effectuate the primary relief. They allege that although they can profit from an education either in regular classrooms with supportive services or in special classes adopted to their needs, they have been labelled as behavioral problems, mentally retarded, emotionally disturbed or hyperactive, and denied admission to the public schools or excluded therefrom after admission, with no provision for alternative educational placement or periodic review. The action was certified as a class action under Rule 23(b)(1)

and (2) of Federal Rules of Civil Procedure by order of the Court dated December 17, 1971.

The defendants are the Board of Education of the District of Columbia and its members, the Superintendent of Schools for the District of Columbia and subordinate school officials, the Commissioner of the District of Columbia and certain subordinate officials and the District of Columbia.

## THE PROBLEM

The genesis of this case is found (1) in the failure of the District of Columbia to provide publicly supported education and training to plaintiffs and other "exceptional" children, members of their class, and (2) the excluding, suspending, expelling, reassigning and transferring of "exceptional" children from regular public school classes without affording them due process of law.

The problem of providing special education for "exceptional" children (mentally retarded, emotionally disturbed, physically handicapped, hyperactive and other children with behavioral problems) is one of major proportions in the District of Columbia. The precise number of such children cannot be stated because the District has continuously failed to comply with Section 31–208 of the District of Columbia Code which requires a census of all children aged 3 to 18 in the District to be taken. Plaintiffs estimate that there are " . . . 22,000 retarded, emotionally disturbed, blind, deaf, and speech or learning disabled children, and perhaps as many as 18,000 of these children are not being furnished with programs of specialized education." According to data prepared by the Board of Education, Division of Planning, Research and Evaluation, the District of Columbia provides publicly supported special education programs of various descriptions to at least 3880 school age children.[1] However, in a

---

1. See the following reports compiled by the District of Columbia Board of Education, Division of Planning, Research and Evaluation:

(1) Regularly Funded Special Education Programs in the District of Columbia Public Schools, 1970–71;
(2) ESEA Title III Federal Programs of Special Education in the District of

1971 report to the Department of Health, Education and Welfare, the District of Columbia Public Schools admitted that an estimated 12,340 handicapped children were not to be served in the 1971–72 school year.[2]

Each of the minor plaintiffs in this case qualifies as an "exceptional" child.

Plaintiffs allege in their complaint and defendants admit as follows:

"PETER MILLS is twelve years old, black, and a committed dependent ward of the District of Columbia resident at Junior Village. He was excluded from the Brent Elementary School on March 23, 1971, at which time he was in the fourth grade. Peter allegedly was a 'behavior problem' and was recommended and approved for exclusion by the principal. Defendants have not provided him with a full hearing or with a timely and adequate review of his status. Furthermore, Defendants have failed to provide for his reenrollment in the District of Columbia Public Schools or enrollment in private school. On information and belief, numerous other dependent children of school attendance age at Junior Village are denied a publicly-supported education. Peter remains excluded from any publicly-supported education.

"DUANE BLACKSHEARE is thirteen years old, black, resident at Saint Elizabeth's Hospital, Washington, D. C., and a dependent committed child. He was excluded from the Giddings Elementary School in October, 1967, at which time he was in the third grade. Duane allegedly was a "behavior problem." Defendants have not provided him with a full hearing or with a timely and adequate review of his status. Despite repeated efforts by his mother, Duane remained largely excluded from all publicly-supported education until February, 1971. Edu-

cation experts at the Child Study Center examined Duane and found him to be capable of returning to regular class if supportive services were provided. Following several articles in the Washington Post and Washington Star, Duane was placed in a regular seventh grade classroom on a two-hour a day basis without any catch-up assistance and without an evaluation or diagnostic interview of any kind. Duane has remained on a waiting list for a tuition grant and is now excluded from all publicly-supported education.

"GEORGE LIDDELL, JR., is eight years old, black, resident with his mother, Daisy Liddell, at 601 Morton Street, N. W., Washington, D. C., and an AFDC recipient. George has never attended public school because of the denial of his application to the Maury Elementary School on the ground that he required a special class. George allegedly was retarded. Defendants have not provided him with a full hearing or with a timely and adequate review of his status. George remains excluded from all publicly-supported education, despite a medical opinion that he is capable of profiting from schooling, and despite his mother's efforts to secure a tuition grant from Defendants.

"STEVEN GASTON is eight years old, black, resident with his mother, Ina Gaston, at 714 9th Street, N. E., Washington, D. C. and unable to afford private instruction. He has been excluded from the Taylor Elementary School since September, 1969, at which time he was in the first grade. Steven allegedly was slightly brain-damaged and hyperactive, and was excluded because he wandered around the classroom. Defendants have not provided him with a full hearing or with a timely and adequate review of his status. Steven was accepted in the Contemporary School, a private

Columbia Public Schools, 1970–71; (3) Membership: Special Education Programs and Services, 1970–71: Non Public School Resources.

2. See report entitled, "Description of Projected Activities for Fiscal Year 1972 for the Education of Handicapped Children," March 15, 1971.

school, provided that tuition was paid in full in advance. Despite the efforts of his parents, Steven has remained on a waiting list for the requisite tuition grant from Defendant school system and excluded from all publicly-supported education.

"MICHAEL WILLIAMS is sixteen years old, black, resident at Saint Elizabeth's Hospital, Washington, D. C., and unable to afford private instruction. Michael is epileptic and allegedly slightly retarded. He has been excluded from the Sharpe Health School since October, 1969, at which time he was temporarily hospitalized. Thereafter Michael was excluded from school because of health problems and school absences. Defendants have not provided him with a full hearing or with a timely and adequate review of his status. Despite his mother's efforts, and his attending physician's medical opinion that he could attend school, Michael has remained on a waiting list for a tuition grant and excluded from all publicly-supported education.

"JANICE KING is thirteen years old, black, resident with her father, Andrew King, at 233 Anacostia Avenue, N. E., Washington, D. C., and unable to afford private instruction. She has been denied access to public schools since reaching compulsory school attendance age, as a result of the rejection of her application, based on the lack of an appropriate educational program. Janice is brain-damaged and retarded, with right hemiplegia, resulting from a childhood illness. Defendants have not provided her with a full hearing or with a timely and adequate review of her status. Despite repeated efforts by her parents, Janice has been excluded from all publicly-supported education.

"JEROME JAMES is twelve years old, black, resident with his mother, Mary James, at 2512 Ontario Avenue,

N. W., Washington, D. C., and an AFDC recipient. Jerome is a retarded child and has been totally excluded from public school. Defendants have not given him a full hearing or a timely and adequate review of his status. Despite his mother's efforts to secure either public school placement or a tuition grant, Jerome has remained on a waiting list for a tuition grant and excluded from all publicly supported education."[3]

Although all of the named minor plaintiffs are identified as Negroes the class they represent is not limited by their race. They sue on behalf of and represent all other District of Columbia residents of school age who are eligible for a free public education and who have been, or may be, excluded from such education or otherwise deprived by defendants of access to publicly supported education.

Minor plaintiffs are poor and without financial means to obtain private instruction. There has been no determination that they may not benefit from specialized instruction adapted to their needs. Prior to the beginning of the 1971–72 school year minor plaintiffs, through their representatives, sought to obtain publicly supported education and certain of them were assured by the school authorities that they would be placed in programs of publicly supported education and certain others would be recommended for special tuition grants at private schools. However, none of the. plaintiff children were placed for the 1971 Fall term and they continued to be entirely excluded from all publicly supported education. After thus trying unsuccessfully to obtain relief from the Board of Education the plaintiffs filed this action on September 24, 1971.

## THERE IS NO GENUINE ISSUE OF MATERIAL FACT

Congress has decreed a system of publicly supported education for the chil-

3. The Court is informed that since the filing of this action some of the named plaintiffs have been placed in private schools, some in public schools, and others remain excluded.

dren of the District of Columbia.[4] The Board of Education has the responsibility of administering that system in accordance with law and of providing such publicly supported education to all of the children of the District, including these "exceptional" children.[5]

Defendants have admitted in these proceedings that they are under an affirmative duty to provide plaintiffs and their class with publicly supported education suited to each child's needs, including special education and tuition grants, and also, a constitutionally adequate prior hearing and periodic review. They have also admitted that they failed to supply plaintiffs with such publicly supported education and have failed to afford them adequate prior hearing and periodic review. On December 20, 1971 the plaintiffs and defendants agreed to and the Court signed an interim stipulation and order which provided in part as follows:

"Upon consent and stipulation of the parties, it is hereby ORDERED that:

"1. Defendants shall provide plaintiffs Peter Mills, Duane Blacksheare, Steven Gaston and Michael Williams with a publicly-supported education suited to their (plaintiffs') needs by January 3, 1972.

"2. Defendants shall provide counsel for plaintiffs, by January 3, 1972, a list showing, for every child of school age then known not to be attending a publicly-supported educational program because of suspension, expulsion, exclusion, or any other denial of placement, the name of the child's parent or guardian, the child's name, age, address and telephone number, the date of his suspension, expulsion, exclusion or denial of placement and, without attributing a particular characteristic to any specific child, a breakdown of such list, showing the alleged causal characteristics for such nonattendance and the number of children possessing such alleged characteristics.

"3. By January 3, 1972, defendants shall initiate efforts to identify remaining members of the class not presently known to them, and also by that date, shall notify counsel for plaintiffs of the nature and extent of such efforts. Such efforts shall include, at a minimum, a system-wide survey of elementary and secondary schools, use of the mass written and electronic media, and a survey of District of Columbia agencies who may have knowledge pertaining to such remaining members of the class. By February 1, 1972, defendants shall provide counsel for plaintiffs with the names, addresses and telephone numbers of such remaining members of the class then known to them.

"4. Pending further action by the Court herein, the parties shall consider the selection and compensation of a master for determination of special questions arising out of this action with regard to the placement of children in a publicly-supported educational program suited to their needs."

On February 9, 1972, the Board of Education passed a Resolution which included the following:

"*Special Education*

"7. All vacant authorized special education positions, whether in the regular, Impact Aid, or other Federal budgets, shall be filled as rapidly as possible within the capability of the Special Education Department. Regardless of the capability of the Department to fill vacant positions, all funds presently appropriated or allotted for special education, whether in the regular, Impact Aid, or other Federal budgets, shall be spent solely for special education.

"8. The Board requests the Corporation Counsel to ask the United

---

4. District of Columbia Code, 31–101–et seq.

5. District of Columbia Code, 31–103.

States District Court for an extension of time within which to file a response to plaintiffs' motion for summary judgment in Mills v. Board of Education on the grounds that (a) the Board intends to enter into a consent judgment declaring the rights of children in the District of Columbia to a public education; and (b) the Board needs time (not in excess of 30 days) to obtain from the Associate Superintendent for Special Education a precise projection on a monthly basis the cost of fulfilling those budgets.

"9. The Board directs the Rules Committee to devise as soon as possible for the purpose of Mills v. Board of Education rules defining and providing for due process and fair hearings; and requests the Corporation Counsel to lend such assistance to the Board as may be necessary in devising such rules in a form which will meet the requirements of Mills v. Board of Education.

"10. It is the intention of the Board to submit for approval by the Court in Mills v. Board of Education a Memorandum of Understanding setting forth a comprehensive plan for the education, treatment and care of physically or mentally impaired children in the age range from three to twenty-one years. It is hoped that the various other District of Columbia agencies concerned will join with the Board in the submission of this plan.

"It is the further intention of the Board to establish procedures to implement the finding that all children can benefit from education and, have a right to it, by providing for comprehensive health and psychological appraisal of children and the provision for each child of any special education which he may need. The Board will further require that no change in the kind of education provided for a child will be made against his wishes or the wishes of his parent or guardian unless he has been accorded a full hearing on the matter consistent with due process."

Defendants failed to comply with that consent order and there is now pending before the Court a motion of the plaintiffs to require defendants to show cause why they should not be held in contempt for such failure to comply.

On January 21, 1972 the plaintiffs filed a motion for summary judgment and a proposed order and decree for implementation of the proposed judgment and requested a hearing. On March 1, 1972 the defendants responded as follows:

"1. The District of Columbia and its officers who are named defendants to this complaint consent to the entrance of a judgment declaring the rights of the plaintiff class to the effect prayed for in the complaint, as specified below, such rights to be prospectively effective as of March 1, 1972:

That no child eligible for a publicly supported education in the District of Columbia public schools shall be excluded from a regular public school assignment by a Rule, policy, or practice of the Board of Education of the District of Columbia or its agents unless such child is provided (a) adequate alternative educational services suited to the child's needs, which may include special education or tuition grants, and (b) a constitutionally adequate prior hearing and periodic review of the child's status, progress, and the adequacy of any educational alternative.

It is submitted that the entrance of a declaratory judgment to this effect renders plaintiffs' motion for summary judgment moot.

"2. For response to plaintiffs' motion for a hearing, defendants respect-

fully request that this Court hold a hearing as soon as practicable at which defendants will present a plan to implement the above declaratory judgment and at which the Court may decide whether further relief is appropriate."

The Court set the date of March 24, 1972, for the hearing that both parties had requested and specifically ordered the defendants to submit a copy of their proposed implementation plan no later than March 20, 1972.

On March 24, 1972, the date of the hearing, the defendants not only had failed to submit their implementation plan as ordered but were also continuing in their violation of the provisions of the Court's order of December 20, 1971. At the close of the hearing on March 24, 1972, the Court found that there existed no genuine issue of a material fact; orally granted plaintiffs' motion for summary judgment, and directed defendants to submit to the Court any proposed plan they might have on or before March 31, 1972.[6] The defendants, other than Cassell, failed to file any proposal within the time directed. However, on April 7, 1972, there was sent to the Clerk of the Court on behalf of the Board of Education and its employees who are defendants in this case the following documents:

1. A proposed form of Order to be entered by the Court.

2. An abstract of a document titled "A District of Columbia Plan for Identification, Assessment, Evaluation, and Placement of Exceptional Children".

3. A document titled "A District of Columbia Plan for Identification, Assessment, Evaluation, and Placement of Exceptional Children".[7]

4. Certain Attachments and Appendices to this Plan.

The letter accompanying the documents contained the following paragraph:

"These documents express the position of the Board of Education and its employees as to what should be done to implement the judgment of the Honorable Joseph C. Waddy, the District Judge presiding over this civil action. The contents of these documents have not been endorsed by the other defendants in this case."

None of the other defendants have filed a proposed order or plan. Nor has any of them adopted the proposal submitted by the Board of Education. Throughout these proceedings it has been obvious to the Court that the defendants have no common program or plan for the alleviation of the problems posed by this litigation and that this lack of communication, cooperation and plan is typical and contributes to the problem.

## PLAINTIFFS ARE ENTITLED TO RELIEF

Plaintiffs' entitlement to relief in this case is clear. The applicable statutes and regulations and the Constitution of the United States require it.

### Statutes and Regulations

Section 31–201 of the District of Columbia Code requires that:

"Every parent, guardian, or other person residing [permanently or temporarily] in the District of Columbia who has custody or control of a child between the ages of seven and sixteen years shall cause said child to be regularly instructed in a public school or in a private or parochial school or instructed privately during the period of each year in which the public schools of the District of Columbia are in session . . ."

Under Section 31–203, a child may be "excused" from attendance only when

---

6. Defendant Cassell filed a separate Answer to the Complaint consenting to the relief prayed for and also filed a memorandum in support of plaintiff's proposed Order and Decree.

7. The Board of Education has not adopted this plan.

". . . . upon examination ordered by . . . [the Board of Education of the District of Columbia], [the child] is found to be unable mentally or physically to profit from attendance at school: Provided, however, That if such examination shows that such child may benefit from specialized instruction adapted to his needs, he shall attend upon such instruction."

Failure of a parent to comply with Section 31–201 constitutes a criminal offense. D.C.Code 31–207. The Court need not belabor the fact that requiring parents to see that their children attend school under pain of criminal penalties presupposes that an educational opportunity will be made available to the children. The Board of Education is required to make such opportunity available. It has adopted rules and regulations consonant with the statutory direction. Chapter XIII of the Board Rules contains the following:

1.1—All children of the ages hereinafter prescribed who are bona fide residents of the District of Columbia are entitled to admission and free tuition in the Public Schools of the District of Columbia, subject to the rules, regulations, and orders of the Board of Education and the applicable statutes.

14.1—Every parent, guardian, or other person residing permanently or temporarily in the District of Columbia who has custody or control of a child residing in the District of Columbia between the ages of seven and sixteen years shall cause said child to be regularly instructed in a public school or in a private or parochial school or instructed privately during the period of each year in which the Public Schools of the District of Columbia are in session, provided that instruction given in such private or parochial school, or privately, is deemed reasonably equivalent by the Board of Education to the instruction given in the Public Schools.

14.3—The Board of Education of the District of Columbia may, upon written recommendation of the Superintendent of Schools, issue a certificate excusing from attendance at school a child who, upon examination by the Department of Pupil Appraisal, Study and Attendance or by the Department of Public Health of the District of Columbia, is found to be unable mentally or physically to profit from attendance at school: Provided, however, that if such examination shows that such child may benefit from specialized instruction adapted to his needs, he shall be required to attend such classes.

■■ Thus the Board of Education has an obligation to provide whatever specialized instruction that will benefit the child. By failing to provide plaintiffs and their class the publicly supported specialized education to which they are entitled, the Board of Education violates the above statutes and its own regulations.

*The Constitution—Equal Protection and Due Process*

The Supreme Court in Brown v. Board of Education, 347 U.S. 483, 493, 74 S.Ct. 686, 691, 98 L.Ed. 873 (1954) stated:

"Today, education is perhaps the most important function of state and local governments. Compulsory school attendance laws and the great expenditures for education both demonstrate our recognition of the importance of education to our democratic society. It is required in the performance of our most basic public responsibilities, even service in the armed forces. It is the very foundation of good citizenship. Today it is a principal instrument in awakening the child to cultural values, in preparing him for later professional training, and in helping

him to adjust normally to his environment. In these days, it is doubtful that any child may reasonably be expected to succeed in life if he is denied the opportunity of an education. *Such an opportunity, where the state has undertaken to provide it, is a right which must be made available to all on equal terms.* (emphasis supplied)

Bolling v. Sharpe, 347 U.S. 497, 74 S. Ct. 693, 98 L.Ed. 884, decided the same day as *Brown,* applied the *Brown* rationale to the District of Columbia public schools by finding that:

"Segregation in public education is not reasonably related to any proper governmental objective, and thus it imposes on Negro children of the District of Columbia a burden that constitutes an arbitrary deprivation of their liberty in violation of the Due Process Clause."

In Hobson v. Hansen, 269 F.Supp. 401 (D.C.D.C.1967) Circuit Judge J. Skelly Wright considered the pronouncements of the Supreme Court in the intervening years and stated that ". . . the Court has found the due process clause of the Fourteenth Amendment elastic enough to embrace not only the First and Fourth Amendments, but the self-incrimination clause of the Fifth, the speedy trial, confrontation and assistance of counsel clauses of the Sixth, and the cruel and unusual clause of the Eighth." (269 F.Supp. 401 at 493, citations omitted). Judge Wright concluded "(F)rom these considerations the court draws the conclusion that the doctrine of equal educational opportunity—the equal protection clause in its application to public school education—is in its full sweep a component of due process binding on the District under the due process clause of the Fifth Amendment."

■ In Hobson v. Hansen, *supra,* Judge Wright found that denying poor public school children educational opportunities equal to that available to more affluent public school children was violative of the Due Process Clause of the Fifth Amendment. *A fortiori,* the defendants' conduct here, denying plaintiffs and their class not just an equal publicly supported education but all publicly supported education while providing such education to other children, is violative of the Due Process Clause.

■ Not only are plaintiffs and their class denied the publicly supported education to which they are entitled many are suspended or expelled from regular schooling or specialized instruction or reassigned without any prior hearing and are given no periodic review thereafter. Due process of law requires a hearing prior to exclusion, termination of classification into a special program. Vought v. Van Buren Public Schools, 306 F.Supp. 1388 (E.D.Mich.1969); Williams v. Dade County School Board, 441 F.2d 299 (5th Cir.1971); Cf. Soglin v. Kauffman, 295 F.Supp. 978 (W.D. Wis.1968); Dixon v. Alabama State Board of Education, 294 F.2d 150 (5th Cir.1961), cert. den., 368 U.S. 930, 82 S. Ct. 368, 7 L.Ed.2d 193 (1961); Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).

### The Defense

The Answer of the defendants to the Complaint contains the following:

"These defendants say that it is impossible to afford plaintiffs the relief they request unless:

(a) The Congress of the United States appropriates millions of dollars to improve special education services in the District of Columbia; or

(b) These defendants divert millions of dollars from funds already specifically appropriated for other educational services in order to improve special educational services. These defendants suggest that to do so would violate an Act of Congress and would be inequitable to children outside the alleged plaintiff class."

This Court is not persuaded by that contention.

■ The defendants are required by the Constitution of the United States, the District of Columbia Code, and their own regulations to provide a publicly-supported education for these "exceptional" children. Their failure to fulfill this clear duty to include and retain these children in the public school system, or otherwise provide them with publicly-supported education, and their failure to afford them due process hearing and periodical review, cannot be excused by the claim that there are insufficient funds. In Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1969) the Supreme Court, in a case that involved the right of a welfare recipient to a hearing before termination of his benefits, held that Constitutional rights must be afforded citizens despite the greater expense involved. The Court stated at page 266, 90 S.Ct. at page 1019, that "the State's interest that his [welfare recipient] payments not be erroneously terminated, clearly outweighs the State's competing concern to prevent any increase in its fiscal and administrative burdens." Similarly the District of Columbia's interest in educating the excluded children clearly must outweigh its interest in preserving its financial resources. If sufficient funds are not available to finance all of the services and programs that are needed and desirable in the system then the available funds must be expended equitably in such a manner that no child is entirely excluded from a publicly supported education consistent with his needs and ability to benefit therefrom. The inadequacies of the District of Columbia Public School System whether occasioned by insufficient funding or administrative inefficiency, certainly cannot be permitted to bear more heavily on the "exceptional" or handicapped child than on the normal child.

## IMPLEMENTATION OF JUDGMENT

This Court has pointed out that Section 31–201 of the District of Columbia Code requires that every person residing in the District of Columbia ". . . who has custody or control of a child between the ages of seven and sixteen years shall cause said child to be regularly instructed in a public school or in a private or parochial school or instructed privately . . . ." [8] It is the responsibility of the Board of Education to provide the opportunities and facilities for such instruction.

■ The Court has determined that the Board likewise has the responsibility for implementation of the judgment and decree of this Court in this case. Section 31–103 of the District of Columbia Code clearly places this responsibility upon the Board. It provides:

"The Board shall determine all questions of general policy relating to the schools, shall appoint the executive officers hereinafter provided for, define their duties, and direct expenditures."

The lack of communication and cooperation between the Board of Education and the other defendants in this action shall not be permitted to deprive plaintiffs and their class of publicly supported education. Section 31–104b of the District of Columbia Code dictates that the Board of Education and the District of Columbia Government must coordinate educational and municipal functions:

"(a) The Board of Education and the Commissioner of the District of Columbia shall jointly develop procedures to assure the maximum coordination of educational and other municipal programs and services in *achieving the most effective educational system and utilization of educationl facilities and services to serve broad community needs.* Such procedures shall cover such matters as—

"(1) design and construction of educational facilities to accommodate civic and community activities such as recreation, adult and vocational educa-

8. This requirement is equally applicable to the Department of Human Resources, Social Services Administration, with re-spect to wards committed to them pursuant to D.C.Code Sections 3–116 and 3–117.

tion and training, and other community purposes;

"(2) full utilization of educational facilities during nonschool hours for community purposes;

"(3) utilization of municipal services such as police, sanitation, recreational, maintenance services to enhance the effectiveness and stature of the school in the community;

"(4) *arrangements for cost-sharing and reimbursements on school and community programs involving utilization of educational facilities and services; and*

"(5) other matters of mutual interest and concern.

"(b) *The Board of Education may invite the Commissioner of the District of Columbia or his designee to attend and participate in meetings of the Board on matters pertaining to coordination of educational and other municipal programs and services and on such other matters as may be of mutual interest.*" (Emphasis supplied).

If the District of Columbia Government and the Board of Education cannot jointly develop the procedures and programs necessary to implement this Court's order then it shall be the responsibility of the Board of Education to present the irresolvable issue to the Court for resolution in a timely manner so that plaintiffs and their class may be afforded their constitutional and statutory rights. If any dispute should arise between the defendants which requires for its resolution a degree of expertise in the field of education not possessed by the Court, the Court will appoint a special master pursuant to the provisions of Rule 53 of the Federal Rules of Civil Procedure to assist the Court in resolving the issue.

Inasmuch as the Board of Education has presented for adoption by the Court a proposed "Order and Decree" embodying its present plans for the identification of "exceptional" children and providing for their publicly supported education, including a time table, and further requiring the Board to formulate and file with the Court a more comprehensive plan,[9] the Court will not now appoint a special master as was requested by plaintiffs. Despite the defendants' failure to abide by the provisions of the Court's previous orders in this case and despite the defendants' continuing failure to provide an education for these children, the Court is reluctant to arrogate to itself the responsibility of administering this or any other aspect of the Public School System of the District of Columbia through the vehicle of a special master. Nevertheless, inaction or delay on the part of the defendants, or failure by the defendants to implement the judgment and decree herein within the time specified therein will result in the immediate appointment of a special master to oversee and direct such implementation under the direction of this Court. The Court will include as a part of its judgment the proposed "Order and Decree" submitted by the Board of Education, as modified in minor part by the Court, and will retain jurisdiction of the cause to assure prompt implementation of the judgment. Plaintiffs' motion to require certain defendants to show cause why they should not be adjudged in contempt will be held in abeyance for 45 days.

## JUDGMENT AND DECREE

Plaintiffs having filed their verified complaint seeking an injunction and declaration of rights as set forth more fully in the verified complaint and the prayer for relief contained therein; and having moved this Court for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, and this Court having reviewed the record of this cause including plaintiffs' Motion, pleadings, affidavits, and evidence and arguments

---

9. The plaintiffs' proposed "Order and Decree" suggests plans, procedures and time tables similar to those proposed by defendant, Board of Education.

in support thereof, and defendants' affidavit, pleadings, and evidence and arguments in support thereof, and the proceedings of pre-trial conferences on December 17, 1971, and January 14, 1972, it is hereby ordered, adjudged and decreed that summary judgment in favor of plaintiffs and against defendants be, and hereby is, granted, and judgment is entered in this action as follows:

■■■ 1. That no child eligible for a publicly supported education in the District of Columbia public schools shall be excluded from a regular public school assignment by a Rule, policy, or practice of the Board of Education of the District of Columbia or its agents unless such child is provided (a) adequate alternative educational services suited to the child's needs, which may include special education or tuition grants, and (b) a constitutionally adequate prior hearing and periodic review of the child's status, progress, and the adequacy of any educational alternative.

2. The defendants, their officers, agents, servants, employees, and attorneys and all those in active concert or participation with them are hereby enjoined from maintaining, enforcing or otherwise continuing in effect any and all rules, policies and practices which exclude plaintiffs and the members of the class they represent from a regular public school assignment without providing them at public expense (a) adequate and immediate alternative education or tuition grants, consistent with their needs, and (b) a constitutionally adequate prior hearing and periodic review of their status, progress and the adequacy of any educational alternatives; and it is further ORDERED that:

3. The District of Columbia shall provide to each child of school age a free and suitable publicly-supported education regardless of the degree of the child's mental, physical or emotional disability or impairment. Furthermore, defendants shall not exclude any child resident in the District of Columbia from such publicly-supported education on the basis of a claim of insufficient resources.

4. Defendants shall not suspend a child from the public schools for disciplinary reasons for any period in excess of two days without affording him a hearing pursuant to the provisions of Paragraph 13.f., below, and without providing for his education during the period of any such suspension.

5. Defendants shall provide each identified member of plaintiff class with a publicly-supported education suited to his needs within thirty (30) days of the entry of this order. With regard to children who later come to the attention of any defendant, within twenty (20) days after he becomes known, the evaluation (case study approach) called for in paragraph 9 below shall be completed and within 30 days after completion of the evaluation, placement shall be made so as to provide the child with a publicly supported education suited to his needs.

In either case, if the education to be provided is not of a kind generally available during the summer vacation, the thirty-day limit may be extended for children evaluated during summer months to allow their educational programs to begin at the opening of school in September.

6. Defendants shall cause announcements and notices to be placed in the Washington Post, Washington Star-Daily News, and the Afro-American, in all issues published for a three week period commencing within five (5) days of the entry of this order, and thereafter at quarterly intervals, and shall cause spot announcements to be made on television and radio stations for twenty (20) consecutive days, commencing within five (5) days of the entry of this order, and thereafter at quarterly intervals, advising residents of the District of Columbia that all children, regardless of any handicap or other disability, have a right to a publicly-supported education suited to their needs, and informing the parents or guardians of such children of the pro-

cedures required to enroll their children in an appropriate educational program. Such announcements should include the listing of a special answering service telephone number to be established by defendants in order to (a) compile the names, addresses, phone numbers of such children who are presently not attending school and (b) provide further information to their parents or guardians as to the procedures required to enroll their children in an appropriate educational program.

7. Within twenty-five (25) days of the entry of this order, defendants shall file with the Clerk of this Court, an up-to-date list showing, for every additional identified child, the name of the child's parent or guardian, the child's name, age, address and telephone number, the date of his suspension, expulsion, exclusion or denial of placement and, without attributing a particular characteristic to any specific child, a breakdown of such list, showing the alleged causal characteristics for such nonattendance (e. g., educable mentally retarded, trainable mentally retarded, emotionally disturbed, specific learning disability, crippled/other health impaired, hearing impaired, visually impaired, multiple handicapped) and the number of children possessing each such alleged characteristic.

8. Notice of this order shall be given by defendants to the parent or guardian of each child resident in the District of Columbia who is now, or was during the 1971–72 school year or the 1970–71 school year, excluded, suspended or expelled from publicly-supported educational programs or otherwise denied a full and suitable publicly-supported education for any period in excess of two days. Such notice shall include a statement that each such child has the right to receive a free educational assessment and to be placed in a publicly-supported educational program suited to his needs. Such notice shall be sent by registered mail within five (5) days of the entry of this order, or within five (5) days after such child first becomes known to any defendant. Provision of notification for non-reading parents or guardians will be made.

9. a. Defendants shall utilize public or private agencies to evaluate the educational needs of all identified "exceptional" children and, within twenty (20) days of the entry of this order, shall file with the Clerk of this Court their proposal for each individual placement in a suitable educational program, including the provision of compensatory educational services where required.

b. Defendants, within twenty (20) days of the entry of this order, shall, also submit such proposals to each parent or guardian of such child, respectively, along with a notification that if they object to such proposed placement within a period of time to be fixed by the parties or by the Court, they may have their objection heard by a Hearing Officer in accordance with procedures required in Paragraph 13.e., below.

10. a. Within forty-five (45) days of the entry of this order, defendants shall file with the Clerk of the Court, with copy to plaintiffs' counsel, a comprehensive plan which provides for the identification, notification, assessment, and placement of class members. Such plan shall state the nature and extent of efforts which defendants have undertaken or propose to undertake to

(1) describe the curriculum, educational objectives, teacher qualifications, and ancillary services for the publicly-supported educational programs to be provided to class members; and,

(2) formulate general plans of compensatory education suitable to class members in order to overcome the present effects of prior educational deprivations,

(3) institute any additional steps and proposed modifications designed to implement the matters decreed in paragraph 5 through 7 hereof and other requirements of this judgment.

11. The defendants shall make an interim report to this Court on their per-

formance within forty-five (45) days of the entry of this order. Such report shall show:

(1) The adequacy of Defendants' implementation of plans to identify, locate, evaluate and give notice to all members of the class.

(2) The number of class members who have been placed, and the nature of their placements.

(3) The number of contested hearings before the Hearing Officers, if any, and the findings and determinations resulting therefrom.

12. Within forty-five (45) days of the entry of this order, defendants shall file with this Court a report showing the expunction from or correction of all official records of any plaintiff with regard to past expulsions, suspensions, or exclusions effected in violation of the procedural rights set forth in Paragraph 13 together with a plan for procedures pursuant to which parents, guardians, or their counsel may attach to such students' records any clarifying or explanatory information which the parent, guardian or counsel may deem appropriate.

13. Hearing Procedures.

a. Each member of the plaintiff class is to be provided with a publicly-supported educational program suited to his needs, within the context of a presumption that among the alternative programs of education, placement in a regular public school class with appropriate ancillary services is preferable to placement in a special school class.

b. Before placing a member of the class in such a program, defendants shall notify his parent or guardian of the proposed educational placement, the reasons therefor, and the right to a hearing before a Hearing Officer if there is an objection to the placement proposed. Any such hearing shall be held in accordance with the provisions of Paragraph 13.e., below.

c. Hereinafter, children who are residents of the District of Columbia and are thought by any of the defendants, or by officials, parents or guardians, to be in need of a program of special education, shall neither be placed in, transferred from or to, nor denied placement in such a program unless defendants shall have first notified their parents or guardians of such proposed placement, transfer or denial, the reasons therefor, and of the right to a hearing before a Hearing Officer if there is an objection to the placement, transfer or denial of placement. Any such hearings shall be held in accordance with the provisions of Paragraph 13.e., below.

d. Defendants shall not, on grounds of discipline, cause the exclusion, suspension, expulsion, postponement, interschool transfer, or any other denial of access to regular instruction in the public schools to any child for more than two days without first notifying the child's parent or guardian of such proposed action, the reasons therefor, and of the hearing before a Hearing Officer in accordance with the provisions of Paragraph 13.f., below.

e. Whenever defendants take action regarding a child's placement, denial of placement, or transfer, as described in Paragraphs 13.b. or 13.c., above, the following procedures shall be followed.

(1) Notice required hereinbefore shall be given in writing by registered mail to the parent or guardian of the child.

(2) Such notice shall:

(a) describe the proposed action in detail;

(b) clearly state the specific and complete reasons for the proposed action, including the specification of any tests or reports upon which such action is proposed;

(c) describe any alternative educational opportunities available on a permanent or temporary basis;

(d) inform the parent or guardian of the right to object to the proposed action at a hearing before the Hearing Officer;

(e) inform the parent or guardian that the child is eligible to receive, at no charge, the services

of a federally or locally funded diagnostic center for an independent medical, psychological and educational evalution and shall specify the name, address and telephone number of an appropriate local diagnostic center;

(f) inform the parent or guardian of the right to be represented at the hearing by legal counsel; to examine the child's school records before the hearing, including any tests or reports upon which the proposed action may be based, to present evidence, including expert medical, psychological and educational testimony; and, to confront and cross-examine any school official, employee, or agent of the school district or public department who may have evidence upon which the proposed action was based.

(3) The hearing shall be at a time and place reasonably convenient to such parent or guardian.

(4) The hearing shall be scheduled not sooner than twenty (20) days waivable by parent or child, nor later than forty-five (45) days after receipt of a request from the parent or guardian.

(5) The hearing shall be a closed hearing unless the parent or guardian requests an open hearing.

(6) The child shall have the right to a representative of his own choosing, including legal counsel. If a child is unable, through financial inability, to retain counsel, defendants shall advise child's parents or guardians of available voluntary legal assistance including the Neighborhood Legal Services Organization, the Legal Aid Society, the Young Lawyers Section of the D. C. Bar Association, or from some other organization.

(7) The decision of the Hearing Officer shall be based solely upon the evidence presented at the hearing.

(8) Defendants shall bear the burden of proof as to all facts and as to the appropriateness of any placement, denial of placement or transfer.

(9) A tape recording or other record of the hearing shall be made and transcribed and, upon request, made available to the parent or guardian or his representative.

(10) At a reasonable time prior to the hearing, the parent or guardian, or his counsel, shall be given access to all public school system and other public office records pertaining to the child, including any tests or reports upon which the proposed action may be based.

(11) The independent Hearing Officer shall be an employee of the District of Columbia, but shall not be an officer, employee or agent of the Public School System.

(12) The parent or guardian, or his representative, shall have the right to have the attendance of any official, employee or agent of the public school system or any public employee who may have evidence upon which the proposed action may be based and to confront, and to cross-examine any witness testifying for the public school system.

(13) The parent or guardian, or his representative, shall have the right to present evidence and testimony, including expert medical, psychological or educational testimony.

(14) Within thirty (30) days after the hearing, the Hearing Officer shall render a decision in writing. Such decision shall include findings of fact and conclusions of law and shall be filed with the Board of Education and the Department of Human Resources and sent by registered mail to the parent or guardian and his counsel.

(15) Pending a determination by the Hearing Officer, defendants shall take no action described in Paragraphs 13.-b. or 13.c., above, if the child's parent or guardian objects to such action. Such objection must be in writing and postmarked within five (5) days of

the date of receipt of notification hereinabove described.

f. Whenever defendants propose to take action described in Paragraph 13.d., above, the following procedures shall be followed.

(1) Notice required hereinabove shall be given in writing and shall be delivered in person or by registered mail to both the child and his parent or guardian.

(2) Such notice shall

 (a) describe the proposed disciplinary action in detail, including the duration thereof;

 (b) state specific, clear and full reasons for the proposed action, including the specification of the alleged act upon which the disciplinary action is to be based and the reference to the regulation subsection under which such action is proposed;

 (c) describe alternative educational opportunities to be available to the child during the proposed suspension period;

 (d) inform the child and the parent or guardian of the time and place at which the hearing shall take place;

 (e) inform the parent or guardian that if the child is thought by the parent or guardian to require special education services, that such child is eligible to receive, at no charge, the services of a public or private agency for a diagnostic medical, psychological or educational evaluation;

 (f) inform the child and his parent or guardian of the right to be represented at the hearing by legal counsel; to examine the child's school records before the hearing, including any tests or reports upon which the proposed action may be based; to present evidence of his own; and to confront and cross-examine any witnesses or any school officials, employees or agents who may have evidence upon which the proposed action may be based.

(3) The hearing shall be at a time and place reasonably convenient to such parent or guardian.

(4) The hearing shall take place within four (4) school days of the date upon which written notice is given, and may be postponed at the request of the child's parent or guardian for no more than five (5) additional school days where necessary for preparation.

(5) The hearing shall be a closed hearing unless the child, his parent or guardian requests an open hearing.

(6) The child is guaranteed the right to a representative of his own choosing, including legal counsel. If a child is unable, through financial inability, to retain counsel, defendants shall advise child's parents or guardians of available voluntary legal assistance including the Neighborhood Legal Services Organization, the Legal Aid Society, the Young Lawyers Section of the D. C. Bar Association, or from some other organization.

(7) The decision of the Hearing Officer shall be based solely upon the evidence presented at the hearing.

(8) Defendants shall bear the burden of proof as to all facts and as to the appropriateness of any disposition and of the alternative educational opportunity to be provided during any suspension.

(9) A tape recording or other record of the hearing shall be made and transcribed and, upon request, made available to the parent or guardian or his representative.

(10) At a reasonable time prior to the hearing, the parent or guardian, or the child's counsel or representative, shall be given access to all records of the public school system and any other public office pertaining to the child, including any tests or reports upon which the proposed action may be based.

(11) The independent Hearing Officer shall be an employee of the District of Columbia, but shall not be an officer, employee or agent of the Public School System.

(12) The parent or guardian, or the child's counsel or representative, shall have the right to have the attendance of any public employee who may have evidence upon which the proposed action may be based and to confront and to cross-examine any witness testifying for the public school system.

(13) The parent or guardian, or the child's counsel or representative, shall have the right to present evidence and testimony.

(14) Pending the hearing and receipt of notification of the decision, there shall be no change in the child's educational placement unless the principal (responsible to the Superintendent) shall warrant that the continued presence of the child in his current program would endanger the physical well-being of himself or others. In such exceptional cases, the principal shall be responsible for insuring that the child receives some form of educational assistance and/or diagnostic examination during the interim period prior to the hearing.

(15) No finding that disciplinary action is warranted shall be made unless the Hearing Officer first finds, by clear. and convincing evidence, that the child committed a prohibited act upon which the proposed disciplinary action is based. After this finding has been made, the Hearing Officer shall take such disciplinary action as he shall deem appropriate. This action shall not be more severe than that recommended by the school official initiating the suspension proceedings.

(16) No suspension shall continue for longer than ten (10) school days after the date of the hearing, or until the end of the school year, whichever comes first. In such cases, the principal (responsible to the Superintendent) shall be responsible for insuring that the child receives some form of educational assistance and/or diagnostic examination during the suspension period.

(17) If the Hearing Officer determines that disciplinary action is not warranted, all school records of the proposed disciplinary action, including those relating to the incidents upon which such proposed action was predicated, shall be destroyed.

(18) If the Hearing Officer determines that disciplinary action is warranted, he shall give written notification of his findings and of the child's right to appeal his decision to the Board of Education, to the child, the parent or guardian, and the counsel or representative of the child, within three (3) days of such determination.

(19) An appeal from the decision of the Hearing Officer shall be heard by the Student Life and Community Involvement Committee of the Board of Education which shall provide the child and his parent or guardian with the opportunity for an oral hearing, at which the child may be represented by legal counsel, to review the findings of the Hearing Officer. At the conclusion of such hearing, the Committee shall determine the appropriateness of and may modify such decision. However, in no event may such Committee impose added or more severe restrictions on the child.

14. Whenever the foregoing provisions require notice .to a parent or guardian, and the child in question has no parent or duly appointed guardian, notice is to be given to any adult with whom the child is actually living, as well as to the child himself, and every effort will be made to assure that no child's rights are denied for lack of a parent or duly appointed guardian. Again provision for such notice to non-readers will be made.

15. Jurisdiction of this matter is retained to allow for implementation, modification and enforcement of this Judgment and Decree as may be required.