Patricia ARMSTRONG et al.

v.

Caryl KLINE et al.

Patricia Sue BATTLE et al.

v.

COMMONWEALTH OF PENNSYLVANIA et al.

Natalie BERNARD et al.

v.

COMMONWEALTH OF PENNSYLVANIA et al.

Civ. A. Nos. 78–172, 78–132 and 78–133.

United States District Court,
E. D. Pennsylvania.

Oct. 27, 1980.

Janet F. Stotland, Philadelphia, Pa., for Armstrong.

Sylvia Meek, Philadelphia, Pa., for Bernard & Battle.

Allen C. Warshaw, Deputy Atty. Gen., Dept. of Justice, Harrisburg, Pa., for defendants.

MEMORANDUM AND ORDER

NEWCOMER, District Judge.

To qualify for federal assistance under the Education for All Handicapped Children Act, 20 U.S.C. §§ 1401–1420, a state must have in effect a policy which assures all handicapped children the right to a "free

appropriate public education." § 1412. The Act also establishes procedural safeguards with respect to the implementation of that right. § 1415. The Commonwealth of Pennsylvania, prior to June 21, 1979, had established a policy and practice of refusing to fund the provision of education for any child, handicapped or not, in excess of 180 days per year. Five handicapped children and their parents instituted three class action suits alleging that the defendants' adherence to the 180 day limitation violated plaintiff childrens' constitutional and statutory rights. The actions were consolidated for trial on their common injunctive and declaratory issues.

On June 21, 1979, this Court found that the Commonwealth's 180 day rule violated the class's and named plaintiffs' right to a free appropriate public education under the Act. *Armstrong v. Kline*, 476 F.Supp. 583, 605 (E.D.Pa.1979).[1] Injunctive relief was granted to class members in Remedial Orders #1 and #2, entered August 1 and September 5, 1979, respectively, and to the named plaintiffs in Orders dated July 5 and July 17, 1979.

Defendants sought interlocutory review of the judgment, and on July 15, 1980 the Court of Appeals issued its opinion. *Battle v. Commonwealth*, 629 F.2d 269 (3d Cir., 1980). Although it essentially agreed with this Court that the 180 day limitation violated the Act, the Court of Appeals based its conclusion on different reasoning. As a result, the case was remanded for consideration of whether any of the remedial orders required modification. In the interim, such orders were to remain in effect. Defendant Scanlon has filed a motion to vacate all of this Court's remedial orders. For reasons discussed below, the Motion will be denied.

*Discussion*

In ruling on the validity of the 180 day rule, this Court focused on the content to be given the phrase "free appropriate public education." We found in the Act's definition of "special education," one of the com-

ponents of an appropriate education, an emphasis on meeting the "unique needs" of the handicapped child. Recognizing that "needs arise in [the] context of achieving certain ends, and surely there are certain ends, and not others, that are the concern of this legislation," we turned our inquiry to the goals of the education that states are required to provide under the Act. Although we found no explicit guidance in the Act, we found throughout the legislative history an express intent to "provide for that education which would leave these children, upon school's completion, as independent as possible from dependency on others, including the state, within the limits of the handicapping condition." 476 F.Supp. at 604. Coupled with our factual finding that "for some SPI and SED children, including the named plaintiffs, interruptions in programming, because of regression and the length of time it takes to regain lost skills and behaviors, render it impossible or unlikely that they will attain that state of self-sufficiency that they could otherwise reasonably be expected to reach," *Id.* at 597, this legal conclusion led us to hold that the inflexible 180 day limitation on education violated the Act.

In its opinion the Court of Appeals disagreed with this Court's holding that the Act provides specific educational goals for handicapped children. It found instead that "states are responsible in the first instance for setting reasonable educational objectives and reasonable means for achieving these objectives." At 279. This conclusion was based on several factors: the Act's relative silence on the question of educational goals, the tradition of local autonomy in the areas of resource allocation and educational policy, and the responsibility which the Act places on state agencies in formulating individualized educational programs (IEP) and insuring compliance with the Act. Although the Court of Appeals agreed the legislative history indicated a concern with increased self-sufficiency, it found the his-

---

**1.** The Court did not reach the question of whether the 180 day rule violated plaintiffs' constitutional rights.

tory should merely provide guidance to the states in the formulation of educational goals rather than be determinative of the goals in and of itself. The Court also indicated the legislative history pointed only to a concern with increased self-sufficiency whereas the standard enunciated by this Court mandated maximization of self-sufficiency. *Id.* at 279, n.11.

Having concluded states bear the initial responsibility for formulating reasonable educational objectives and reasonable means for achieving those objectives, the Court of Appeals determined the Act placed two restrictions on the states in these areas: review and approval by the Commissioner of Education and detailed procedures for the formulation of IEPs. *Id.* at 279. It found the Commonwealth's 180 day rule conflicted with both of these provisions.

The Court of Appeals agreed with this Court that the Act's focus on the "unique needs" of the handicapped child mandates consideration of the individual needs of each handicapped child. It noted the statutory requirement of the formulation of an IEP for each child further underscored the Act's emphasis on the individual and found this emphasis to be especially necessary in view of the wide variety of handicapping conditions covered by the Act. An inflexible policy such as the Commonwealth's 180 day rule, which precludes this individualized consideration, is incompatible with this aspect of the Act and must fall. In addition, the Court found the rule to be invalid because it had not been "filtered" through the Commissioner of Education and the general public. *Id.* at 280–281.

With this guidance in mind, the Court turns to the question of whether the Orders issued pursuant to our June 21, 1979 ruling must be modified or vacated. Because the Court of Appeals held that states are in the first instance charged with the responsibility for establishing education goals, defendant Scanlon urges the Court to vacate all Orders entered in this action until the Commonwealth has developed such goals in cooperation with the commissioner of Education. This we decline to do.

As an initial matter we note the Court of Appeals expressly found the 180 day rule to be invalid under the Act, regardless of how promulgated and regardless of the existence or lack of any state policy, due to its preclusion of individualized consideration. Contrary to defendant Scanlon's assertion, we find nothing in the Court of Appeals ruling which would indicate the 180 day rule might be found "an acceptable means of allocating scarce resources." [2] As defendant Scanlon correctly argues, the Court of Appeals was concerned that states not be precluded from articulating educational policies predicated on reasonably conceived goals; however, because *no* state policy incorporating the 180 day rule could be found valid under the Act, plaintiffs are entitled to immediate relief from the illegal rule. In short, the Court of Appeals and this Court agreed that the 180 day rule was invalid but disagreed as to the source of the standard to be used in determining which children are entitled to education in excess of 180 days.

The Court has concluded that none of the remedial orders require modification. This conclusion is based on the Court's finding that the Commonwealth has adopted and secured approval of a policy, as required by the Act, which is equivalent to that utilized in the Court's June 21, 1979 decision and subsequent remedial orders. In the Program Plan for Fiscal Year 1978 the Department of Education referred to 22 Pa.Code § 13.2 as the state policy fulfilling the re-

---

**2.** While the Court of Appeals acknowledged that "hard decisions of resource allocation" are best left to the states in the first instance it did not indicate states were allowed unbridled discretion in this area when competing interests come into play. For example, the Court cited with approval *Mills v. Board of Education*, 348 F.Supp. 866, 876 (D.D.C.1972), which stated that the burden of inadequate funding "cannot be permitted to bear more heavily on the 'exceptional' or handicapped child than on the normal child." At 876. Similarly, the Commonwealth cannot employ an inflexible approach such as the 180 day rule as a means of allocating resources because to do so would violate the handicapped child's right to individualized consideration.

quirement that each state have in effect a "policy that assures all handicapped children the right to a free appropriate public education." Each subsequent plan has likewise incorporated this policy and has been approved by the Commissioner of Education. The section states as follows:

13.2 Purpose

(a) The general provisions of this Chapter shall provide the basis for early identification and evaluation of all exceptional persons and for planning, developing, and operating special education programs and services. It shall be the policy of the Board, through the Secretary of Education, to provide exceptional school-aged persons with quality special education programs and services which will *ultimately enable them to participate as fully as possible in appropriate activities of daily living.*

This Court recognizes that the Court of Appeals has determined that the state's role in the first instance is to formulate reasonable educational goals; however, we are unable to discern any substantive differences between the policy articulated by the State in Section 13.2—"enable them to participate as fully as possible in appropriate activities of daily living"—and that formulated by this Court—"as independent as possible from dependency on others." [3] We therefore conclude that no modification of the Orders entered is necessitated by the Court of Appeals ruling. The Commonwealth is, of course, free to promulgate new policies within the confines of the Court of Appeals ruling; in the absence of such policies, however, the Court believes the existing remedial orders should remain intact.

---

**3.** This standard is, of course, not meant to establish an absolute goal for the individual student's development, or the state's resource allocation. We believe that the state's responsibility under the Act is simply to provide "a free appropriate education" as the term has, in the first instance, been defined by the Commonwealth, and later by this Court, and to do so in the context of the state's reasonable evaluation of its budgetary resources.