Miriam COX et al., Plaintiffs,

v.

Harold BROWN et al., Defendants.

Civ. A. No. 80–2365.

United States District Court,
District of Columbia.

Oct. 7, 1980.

Matthew B. Bogin, Washington, D. C., Michael J. Eig, Washington, D. C., for plaintiffs.

William H. Briggs, Jr., Asst. U. S. Atty., Washington, D. C., for defendants.

## MEMORANDUM OPINION AND ORDER

JOYCE HENS GREEN, District Judge.

This matter is before the Court pursuant to plaintiffs' Motion for Preliminary Injunction[1] directing the Department of Defense ("DoD") to place, at the expense of DoD, the two minor plaintiffs at two specific private schools in the United States in order that they may receive special educational services appropriate to their needs and allegedly unavailable in defendants' school system, the Department of Defense's Dependent Schools ("DoDDS"). These teenaged children, Miriam (15) and Gerald, Jr. ("Jerry") (17), are joined as party plaintiffs by their parents, Winifred L. Cox and Gerald Cox, the latter a civilian employee of the United States Government on loan to the North Atlantic Treaty Organization ("NATO").

In essence, plaintiffs contend that Miriam and Jerry are clearly identified as learning disabled youngsters and, as their father's dependents, are entitled to be educated appropriate to their unique needs as handicapped children. They assert that DoDDS is mandated to identify and assess their individual needs, devise an individualized education program tailored to each special situation and that, if DoDDS cannot provide the necessary services within its own resources, it must make, and fund, referrals to private schools/facilities at no cost to the children's parents. In short, it is plaintiffs' contention that they are entitled to a free individualized special education founded on these children's extraordinary situations. Plaintiffs accuse the DoD of abject failure in this regard, averring that anything short of the requested relief causes not only immediate, continuing, and irreparable deprivation, but an absolute elimination of their established constitutional protections and statutory rights.

Specifically, plaintiffs ask that this Court order DoDDS to pay for residential special education for the Cox children at two United States private boarding schools (Landmark School in Massachusetts and Brandon Hall in Georgia) rather than educate them at SHAPE School, Brussels, Belgium in the special education program specifically designed and developed for each of the children.

The defendants contend they are in compliance with the Education for All Handicapped Children Act, and that they stand ready to provide full education to these children now, pursuant to the assessment of their needs and within their system as presently constituted.

Plaintiffs reflect Miriam's situation and needs as follows: for approximately ten years this child attended European DoDDS, first at the Boblingen School and then at the Brussels (Belgium) American School. In early 1978, pursuant to the expressed concern of her teacher, Miriam received educational and psychological testing which resulted in a diagnosis of a severe learning disability, reading at third grade level. Her parents placed her then, at their expense, in a summer assessment and remediation program at the Landmark School in Brides Crossing, Massachusetts. Although they requested defendants to place and fund Miriam's education in a private residential learning disabled school at Milfield, in the United Kingdom, where she was then enrolled, defendants rejected the request for funding on the bases that the child could receive appropriate instruction in DoDDS European schools and that residential special education for an eighth grade student was unwarranted. Miriam was thereupon removed from Milfield and returned to the Brussels American School for the 1978 school year throughout which time plain-

---

1. Plaintiffs filed for a temporary restraining order on September 17, 1980. Pursuant to discussions with both parties and the Court's order of September 19, 1980, the motion was transformed to one for a preliminary injunction.

tiffs insistently urged defendants to provide appropriate learning disabilities education for their daughter. The Brussels American School did not have such a program.

Plaintiffs contend that they accepted DoDDS's offer, in April 1979, to place Miriam at a residential school in Frankfurt, Germany but that DoDDS took no further action to effectuate the placement which accordingly failed. Subsequently, the parents cooperated with DoDDS' proposal that Miriam be placed in St. John's School, a private English–speaking school in Brussels, and plaintiffs, at their expense, acceded to St. John's request that Miriam first attend the summer 1979 session at Landmark School in the United States. In September 1979, plaintiffs were advised that the St. John's placement was disapproved, that Miriam must return to the Brussels American School, and that a tutor would there be provided for her needs. For approximately two months a tutor was provided, following which Miriam was suspended for one week, later to be reinstated. The plaintiffs contend that DoDDS did not perform an annual assessment of Miriam during these times, nor did it develop an individualized education program (IEP) for her, both mandates, they declare, under the Education for All Handicapped Children Act.

Over the summer 1980, following yet another assessment and evaluation again at plaintiffs' expense, which confirmed that Miriam was severely learning disabled, plaintiffs again conferred with DoDDS officials to request a private residential learning disabilities placement for this child at Landmark. DoDDS refused to fund this placement, whereupon in August 1980, plaintiffs' and defendants' representatives met to develop Miriam's first IEP, this for the 1980–81 school year. The IEP recommended the child's placement at the Supreme Headquarters Allied Powers, Europe School ("SHAPE"). This plaintiff's parents contend that not only is this IEP wholly inadequate but that the proposed placement is similarly inappropriate because, they assert, the SHAPE School lacks the physical facilities, trained personnel, and resources to implement the IEP to provide the requisite special education and related services.

Jerry Cox, the older and more significantly learning disabled of the two children, began school in the Boblingen American School (Germany) in 1969 but, although slow to learn, was not evaluated as handicapped until 1973 when he was diagnosed as having a "classical syndrome of dyslexia." He received speech therapy at Boblingen and, at his parents' expense, a learning disabilities teacher was hired to work with Jerry at Boblingen. In 1977, after the plaintiffs moved to Belgium, another evaluation, noting significant learning and behavorial problems, recommended Jerry be considered for placement at Landmark School in the United States. Plaintiffs enrolled Jerry at the Brussels American School; although it did not have a learning disabilities program, plaintiffs contend they were assured that such a specialist would be hired to work with their son. The adult plaintiffs allege that when Jerry was "systematically and consistently held up to the ridicule of other students" at the Brussels school, they enrolled and maintained Jerry in Landmark for both the 1977–78 and 1978–79 school years despite denials by DoDDS of their multiple requests for funding.

Subsequently Jerry was evaluated at the Brandon Hall School in Dunwoody, Georgia and found to have "a specific learning disability compounded by an adolescent reaction." Attempts to have DoDDS funding for the Brandon Hall placement for the 1979–80 school year were unsuccessful and Jerry attended there at his parents' expense.

It is the plaintiffs' contention that although required by law DoDDS never performed an annual evaluation of Jerry, developed an IEP for this child, nor supplied related special education services prior to the 1979–80 school year or even during that year.

In August 1980, plaintiffs and representatives from DoDDS met to develop an IEP for Jerry for the 1980–81 school year. Plaintiffs strongly assert that the IEP developed is inappropriate to meet the educa-

tional needs of their son, and that the SHAPE School designated lacks the physical facilities, trained personnel, and resources requisite to implement the IEP.

Plaintiffs declare that by DoDDS' alleged arbitrary, capricious, and unreasonable actions in its continuing refusal to fund special education placements in the continental United States, they have violated the handicapped children's constitutional guarantees of due process and the equal protection of a free, appropriate education. Within their complaint they also incorporate more specific charges of statutory violations. They charge, *inter alia*, that DoDDS has neglected and/or unilaterally nullified administrative procedures provided by the Education for All Handicapped Children Act of 1975, Pub.L. No. 94–142, 89 Stat. 773 (1975) ["the EHA"], and the Vocational Rehabilitation Act of 1973, 29 U.S.C. § 794 (1976), *as amended by* the Rehabilitation, Comprehensive Services, and Developmental Disabilities Act of 1978, Pub.L. No. 95–602, §§ 119, 122(d)(2), 92 Stat. 2983, 2987 (1978) ["the Vocational Act"].[2] The specific complaints include but are not limited to the alleged failure of the defendants to perform annual assessments of the minor plaintiffs, to provide adequate IEPs, and to produce a meaningful administrative remedy fortified by regulations. The DoDDS is also accused of abrogating the proscription of the Veterans' Administration against discrimination by an executive agency against handicapped persons. *See* 29 U.S.C. § 794 (Supp. II 1978).

The defendants, recognizing the compassionate strength of plaintiffs' pleas, and all the while assuring the Court of their intention of reasonable accommodation and flexibility within the present framework, nonetheless maintain that despite the grave challenge in achieving full compliance with the EHA, as to the Cox children, they are in compliance with its requirement of providing an appropriate special education program. They point to the IEP designed for these children in August 1980, spanning a full two days' hearing with the defendants paying for the transportation and lodging expenses of plaintiffs' representatives whose input, although largely rejected, was nonetheless considered. The IEP that resulted from this lengthy hearing recommended that the children be placed in the special educational programs of the SHAPE School. A Dr. Jeannette E. Fleischner, defendants' expert, whose affidavit is attached to the defendants' opposition to plaintiffs' motion for preliminary injunction, participated in the conference and concluded after study of the case histories of the children and other discussions, despite her unfamiliarity with any of the schools operated by the Department of Defense Dependent Schools, that Miriam Cox should be judged in need of special education and related services, basing her eligibility on the presence of a specific learning disability. Miriam was ultimately found eligible for special education and related services. Further, as reflected in the final result of the conference, Dr. Fleischner judged Jerry Cox to be in need of special education and related services, based on the presence of a specific learning disability. The plan would place Jerry in a self–contained special education class although Dr. Fleischner did not concur that Jerry required individual tutoring as did other experts and his parents. It was Dr. Fleischner's opinion that both children should receive and benefit from ongoing contact with non–disabled peers, participating substantially in educational programs for nonhandicapped youngsters while they received the special education services they required.

The record, even at this juncture, is documented with statements from plaintiffs' experts, some of whom participated in the foregoing August 1980 conference and who have worked with the same children in specific educational settings (for months with Miriam and for years with Jerry) who vigorously dispute that these children can benefit educationally or survive emotionally in the climate proposed by the defendants.

---

**2.** The parties concur that the EHA was applied to the Department of Defense school system in the Defense Dependents' Education Act of 1978, § 1409(c), 20 U.S.C. § 927(c) (Supp. II 1978); and the effective date of the application to DoDDS was July 1, 1979.

The Court hearing on this preliminary injunction disclosed that the SHAPE School special education program takes place in one large resource room with children of varying learning disabilities simultaneously present, with classes projected from two or three in number to twenty–five or more, all in an absence of any individual rooms for separate one–to–one instruction. The IEPs devised for Miriam and Jerry reflect that Miriam will receive fifty percent of her education in special education classes and Jerry, one–hundred percent special education. The SHAPE School, fifty miles distant from the Cox residence, and accordingly requiring special transportation for the children, is staffed as follows for all the learning disabled children who simultaneously participate in this one room: one special education teacher with an aide to assist that teacher; two full counselors and one PE specialist. The plaintiffs insist that the IEPs devised and the school structure/personnel proffered to their children are wholly inadequate.

Defendants also cite a section of the EHA as a statutory bar to this Court's action, 20 U.S.C. § 1415(e)(3)[3], and assert that the plaintiffs have failed to exhaust their administrative remedies since they were not parties to a hearing where an administrative record could be developed and an attempt further made by DoDDS to resolve their grievances. In applying the EHA, the defendants assert that it is against the policy of "mainstreaming" as articulated by the EHA to place the Cox children in residential special education programs requested by their parents. A preliminary injunction, they contend, would upset the delicate balances drawn by the EHA in mandating the most appropriate education determined by the IEP.

An examination of defendants' suggestion of a statutory bar quickly dispels that argument. According to the defendants' interpretation of 20 U.S.C. § 1415(e)(3), the Court cannot move the children to the two requested schools in the continental United States while this dispute is still pending on the merits. Section 1415(e)(3) is part of the due process section of the EHA granting a panoply of rights to children and their parents or guardians, including the right to examine all relevant records with respect to an educational decision regarding the child, the right to notice and a hearing on any decision by educational authorities that affect the placement of the child, the right to have the decision of local authorities reviewed at the state level, a variety of rights guaranteeing due process at any hearing, and the right to judicial review. Given its obvious intent to guarantee due process to children and parents, within the entire statutory scheme, the defendants' representation that § 1415(e)(3) precludes judicial action in providing the Cox children with the appropriate education that they deserve at this time simply cannot be accepted. The EHA is aimed at providing children with an education commensurate with their individual abilities to learn and appropriate to their individualized, special needs. Where a state, or a federal agency, acts to frustrate the purposes of the Act, however well–meaning, that entity should not be permitted to convert the statute into one against judicial intervention favoring children in their educational pursuits. The Act is plainly designed to protect children from any retaliatory action by the State or from any disciplinary action not commensurate with the educators' need to protect the pupils in its system. It defies comprehension to find congressional intent in this statute which would result in the denial of equitable relief to the vulnerable in an instance when the plaintiffs have been able to demonstrate the substantial likelihood that the educational authorities have failed to comply with the mandates of the Act and where patent irreparable harm will occur absent prompt judicial relief.

---

**3.** That statute provides:

> During the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents or guardians otherwise agree, the child shall remain in the then current educational placement of such child . . . .

20 U.S.C. § 1415(e)(3) (1976).

■ For the Court to grant the extraordinary injunctive relief requested, the plaintiffs must clearly demonstrate (1) that there is a substantial likelihood that they will succeed on the merits of the case, (2) that irreparable harm would occur to the plaintiffs absent such an injunction, (3) that an injunction would not substantially harm the rights of the third party, and (4) that an injunction is in the public interest. *Virginia Petroleum Jobbers Association v. Federal Power Commission*, 104 U.S.App.D.C. 106, 111, 259 F.2d 921, 925 (1958). The plaintiffs need not show a mathematical probability that they will succeed on the merits. Rather, the Court must weigh the irreparability of harm and, if it is substantial, the Court may, in its discretion, grant relief even though its view of the merits may markedly differ from that of the plaintiffs. *Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc.*, 182 U.S.App. D.C. 220, 222–23, 559 F.2d 841, 843–44 (1977).

There seems to be no dispute that the plaintiff children meet the definition of handicapped children in the EHA. *See* 20 U.S.C. § 1401(1) (1976). Similarly, there is no argument that the EHA applies in full force to the DoDDS as of July 1, 1979, *see* 20 U.S.C. § 927(c) (Supp. II 1978), lucidly demonstrating Congress's intent that DoDDS participate fully in programs to educate the handicapped.

In consideration of the affidavits submitted, the other documentation, the various memoranda from each party, and oral argument on September 29, 1980, it is evident that the plaintiffs have fully satisfied the first requirement for injunctive relief. Assuredly, the entire action is not before the Court at this time on the merits, but even a cursory examination of the situation as reflected above suggests that actions by DoDDS appear not to be in compliance with the EHA. Until August 1980, the defendants had not formulated an IEP for either Miriam or Jerry Cox and were not providing them with the special education that numerous educators, and their parents, had advocated for them. In August 1980, the DoDDS, responding to the persistent impor-

tunings of the parents who had veritably bombarded them and political representatives with their cries for assistance, established an IEP for each child essentially recommending that each child attend the SHAPE School with the programs and personnel above described. The defendants' IEPs must be examined in the context of the evaluations of the children's needs given by their former instructors at private, residential educational settings which the children had attended at their parents' expense for substantial periods of time and which had then provided, as these experts recommend to now continue, tutorial settings, constant monitoring, and one–to–one assistance. The detailed knowledge of these children's requirements by plaintiffs' experts must be contrasted with the evaluations of defendants' experts and, in particular, with the content of the affidavit submitted by Dr. Fleischner for the purpose of the instant hearing. While Dr. Fleischner's qualifications are apparently unchallenged, what is impressive is her regrettable lack of opportunity to have viewed these children over some time periods in school settings in the light of specific information concerning the offerings of the Department of Defense Dependents Schools to the children to meet their individualized needs. The IEPs propounded at the August 1980 conference, when viewed with the general lack of special public programs provided by DoDDS, the fact that DoDDS rarely recommends residential educational placements and has no existing residential schools in the United States, and, only in exceptional circumstances, places handicapped children in other schools under contractual arrangements with DoDDS in the continental United States, gives the Court the foundation to find that the plaintiffs have a substantial likelihood of succeeding on the merits in this cause when the entire matter is developed fully at a later hearing.

Absent extraordinary relief from this Court, in the nature of a preliminary injunction to prevent the defendants from interfering with the free educational rights they, and all children, enjoy and deserve,

irreparable harm, of inestimable nature and span, would accrue to these minor plaintiffs and also to the adult plaintiffs. The parents, as guardians of their children and protectors of their emotional, physical, and educational well–being, have the duty, responsibility, and right to demand nothing less than their children receive the fullest measure of education appropriate to their particularized needs, in accordance with the law. As to the children, the parties conceded not only that Miriam and Jerry have each suffered the ridicule of other children and teaching adults in various classes at both Brussels and the SHAPE Schools but also that they have each exhibited behavioral disturbances as a result, presumably, of extreme emotional pressures engendered thereby.

The Court must recognize, and it does, that great harm could result to the children by an injunction at this time and a deviation from the general "mainstreaming" as the SHAPE School would provide. Currently, the educators appear to believe that children with learning disabilities would, in many instances, thrive more successfully when placed in normal educational environments with their peers who have no learning disabilities. This philosophy is endorsed by the EHA itself, see 20 U.S.C. § 1412(5)(B), aimed at providing for children, although handicapped, an appropriate education program. Nonetheless, it would appear that each case must be considered on its own footing. The affidavit of Dr. Karl Pulkkinen, who knows these children well, demonstrates that paramount interests of Miriam and Jerry require placement at private residential, educational facilities, albeit far from their parents' home, and that past experience advises against mainstreaming.

4. The extent of the irreparable harm in this unique case is sufficient to permit rejection of defendants' argument that plaintiffs have failed to exhaust their administrative remedies. A well recognized exception to the exhaustion requirement, in an instance where irreparable harm may accrue, satisfies the failure to pursue administrative remedies. See Renegotiation

■ Defendants also contend that it would be detrimental to the children to place them at Landmark and Brandon Hall Schools now, only to have to remove them after a determination on the merits, should the case be resolved in favor of the defendants. While the Court is obviously sensitive to this risk, and does not express an opinion on the eventual outcome of the dispute, placement at Landmark and Brandon Hall Schools would, even for a brief period of time, provide these children with such an improved educational environment over their existing circumstances and that proposed by defendants, that preliminary relief (even if no more can eventually be warranted), should be granted at this time. Accordingly, it appears that absent injunctive relief, Miriam and Jerry will suffer the irreparable harm of lacking each day of their young lives an appropriate education, one that is sensitive to their particular disabilities, commensurate to their levels of understanding, and fulfilling of their immediate needs. This most important requirement for injunctive relief has been satisfied.[4]

What hardship will befall DoDDS should the Court grant this preliminary injunction to the plaintiffs? The defendants will of course have to pay for this expensive specialized education for Miriam and Jerry in a residential setting. It is Congress however, which has already determined that DoDDS must provide an *appropriate* educational program for each of its pupils. When DoDDS is not to be in compliance with that congressional mandate, as suggested above, then an individualized program, albeit involving expense, must be produced to fulfill not the obvious compassionate necessities for these children but to uphold the congressional intent of devising that which purports to satisfy equal protection.

*Board v. Bannercraft Clothing Co.*, 415 U.S. 1, 24, 94 S.Ct. 1028, 1040, 39 L.Ed.2d 123 (1974). Moreover, it appears from counsels' argument in Court that no regulations yet exist, nor are realistically anticipated for at least many future months, governing the proper procedures to be followed by aggrieved parents and children against DoDDS.

Congress declared when it passed the Education of All Handicapped Children Act of 1975:

It is the purpose of this Act to assure that all handicapped children have available to them ... a free appropriate public education which emphasizes special education and related services designed to meet their needs, to assure that the rights of handicapped children and their parents or guardians are protected, to assist States and localities to provide for the education of all handicapped children, and to assess and assure the effectiveness of efforts to educate handicapped children.

Education of All Handicapped Children Act of 1975, Pub.L. No. 91–230, § 601 *as amended by* Pub.L. No. 94–142, § 3(a), *reprinted at* 20 U.S.C. § 1401 (1976) (Historical Note).

In focusing attention on the particular problems of those who suffer from physical, mental, or emotional learning disabilities, this statement of intent directs a concept of public interest that includes equal treatment for handicapped children and provision of special educational services where needed. The expense that must be borne for this education ultimately by the taxpayers is consistent with the intent that the handicapped children be no less educated and no less sheltered with constitutional protection than those not in need of special services. Whether they are enrolled in a local school system in the continental United States or are overseas dependent children of Defense Department employees, the right is equal: to receive a free appropriate education. Unless reasonable appropriate alternatives are available the rights cannot be constricted by monetary limitations.

■ In sum, plaintiffs have satisfied the elements requisite to injunctive relief.

It is, therefore this 7th day of October, 1980,

ORDERED that the plaintiffs' Motion for a Preliminary Injunction be granted, and it is

FURTHER ORDERED that the plaintiff Miriam Cox be promptly placed at the Landmark School, at Brides Crossing, Massachusetts, for purposes of her education, and it is

FURTHER ORDERED that the plaintiff Gerald Cox, Jr. be promptly placed at the Brandon Hall School in Dunwoody, Georgia, for purposes of his education, and it is

FURTHER ORDERED that the defendants to this action pay for the expenses of the plaintiff children in attending the aforementioned schools, including tuition, room, board, transportation, and any other like expenses associated with that attendance at the Landmark School and Brandon Hall School, and it is

FURTHER ORDERED that the plaintiffs post a security bond of $250, cash or surety, within forty–eight hours of the entry of this Order, and it is

FURTHER ORDERED that the defendants have twenty days within which to file their answer, or other responsive pleading, and it is

FURTHER ORDERED that the plaintiffs have twenty days following the receipt of the defendants' answer or responsive pleading in which to file their motion for class certification.