Carlotta DAVIS, et al., Plaintiffs,

v.

**DISTRICT OF COLUMBIA BOARD OF EDUCATION, et al., Defendants.**

Civ. A. No. 81–2069.

United States District Court,
District of Columbia.

Sept. 23, 1981.

Michael J. Eig, Washington, D. C., for plaintiffs.

Julia L. Sayles, District of Columbia Corp. Counsel, Washington, D. C., for defendants.

## MEMORANDUM OPINION AND ORDER

JOYCE HENS GREEN, District Judge.

This action by a learning disabled child, Carlotta Davis, and her parents, William and Amy Davis, against the District of Columbia Board of Education, by agreement of all parties has been converted, in the interests of justice because of the exigency of time, to a final hearing on the merits. Plaintiffs allege that the defendants have failed to afford minor plaintiff a free and appropriate public education and that the defendants' restriction of the scope of a due process hearing to consideration of only defendants' proposed special education placement is contrary to law and the Constitution.

## FACTUAL BACKGROUND

Carlotta Davis is a specifically learning disabled child in need of special education including occupational therapy and emotional counseling. For four years Carlotta attended the D.C. Society for Crippled Children where she received special education and related services addressed primarily to her sensory-integrative process and motor development. For the last three school years, Carlotta has attended Sidwell Friends School in Washington, D.C. For the first two years there, she was placed in a regular classroom without support services. During the past year, she was removed from the regular classroom for special tutoring in academic subjects with which she was having particular difficulties. Despite resource help in math, reading and perceptual training, Carlotta continued to fall behind the rest of the class and, according to her parents, became quite anxious about the widening gap. In an effort to deal with the ensuing emotional problems, her parents took Carlotta to a child psychiatrist in the spring of 1981. His advice was that they place Carlotta in a setting in which she could experience success and one in which her learning problems would be directly addressed.

Carlotta's parents, therefore, requested that Carlotta receive appropriate special education from the defendants, since both the Sidwell School staff and Mr. and Mrs. Davis felt that Sidwell was unable to address Carlotta's needs. On or before May 6, 1981, the required Form 205 was filed, describing Carlotta's general quality of work in class as "inability to do independent work; im-

pulsivity and distractability." The reason for referral was stated as, "Parents are requesting special education because of learning problems and the need for occupational therapy." At no time did either the school staff or her parents believe that Carlotta had any physical problem. Carlotta's parents provided defendants with numerous psychological, neuropsychological, educational, occupational therapy and other evaluative reports concerning Carlotta's condition and needs at the time of the initial request for placement.

Carlotta's parents, on the unanimous advice of the experts that they consulted, concluded that the only appropriate program for their daughter was at the Christ Church Child Center, a private school for specifically learning disabled children in Montgomery County, Maryland. It had the expertise and experience necessary to accommodate specifically learning disabled children with neurological bases for their learning disability. Among other things, it provided the intensive occupational therapy integrated throughout the daily program that had been deemed critical to Carlotta's schooling.

Defendants, however, did not propose any placement for Carlotta, at Christ Church or elsewhere. On June 26, 1981, Carlotta's parents requested a due process hearing to contest defendants' lack of action in placing Carlotta and to address defendants' financial responsibility for her placement at Christ Church where she had been accepted. At the hearing, on July 7, 1981, the Hearing Officer found the defendants indeed to have failed to provide a placement for Carlotta within the required time limits and ordered them to complete their evaluation and propose a placement within twenty days. The Hearing Officer denied plaintiffs' request for a hearing on defendants' financial responsibility for the parent-selected private school. On July 9, 1981, an Individualized Education Program (IEP) conference was held which plaintiffs were unable to attend but to which they sent their counsel. On July 22, 1981, defendants proposed Sharpe Health School for Carlotta and classified her as a health impaired learning disabled child.

Defendants' placement proposal "came as a surprise" to Mr. and Mrs. Davis. They felt that Sharpe, a public facility for seriously physically handicapped, profoundly retarded or deaf-blind children, was extremely inappropriate for Carlotta, because they claim her to be an intellectually superior, learning disabled child who has no physical handicap that adversely affects her educational performance. In fact, her father in his affidavit described her physical ability as follows: "Carlotta can run, hop, climb stairs, roller skate, and is learning to ride a bike. She participates in games in the neighborhood and at school. She enjoys swimming. To the best of my recollection, the only physical activity that Carlotta either cannot do, or those that are extremely difficult for her, involve kicking a ball or skipping rope." He further stated that "throughout Carlotta's entire school life, virtually every professional that we have consulted has stressed the importance of her remaining in a physically normal setting with non-physically handicapped children. I would fear for her emotional stability if placed at Sharpe." Plaintiffs felt that the only reason defendants proposed Sharpe for Carlotta was the availability of occupational and physical therapy at that school. Those therapies are not available in other public school placements for learning disabled children.

A second due process hearing, this time to consider the appropriateness of the defendants' proposed placement for Carlotta, was postponed from July 31, 1981, to August 24, 1981. At that hearing, which was continued to August 31, 1981, plaintiffs attempted to bring before the Hearing Officer their claim of the inappropriateness of Sharpe and their request that Carlotta be placed at Christ Church. The parents were informed by the Hearing Officer that they could not address the issue of the suggested placement at Christ Church due to the limited nature of the hearing process. Plaintiffs were informed that the only relief that could be afforded at the hearing, should the proposal for placement at Sharpe be found

to be inappropriate, would be to refer the matter back to the defendants again for further action. Plaintiffs left the hearing and brought the matter before this court to contest the Hearing Officer's narrow interpretation of the hearing procedure and to request placement of Carlotta at Christ Church Child Center.

## PLAINTIFFS' CLAIMS

Plaintiffs assert that the court has jurisdiction over all statutory and constitutional claims under Pub.L. 96–486 (Dec. 1, 1980), 28 U.S.C. § 1343 (Supp. III 1979), 29 U.S.C. § 794 (Supp. III 1979), 42 U.S.C. § 1983 (Supp. III 1979), 20 U.S.C. § 1415(e)(2) (1976), and the Fifth Amendment to the United States Constitution.

The plaintiffs' first claim is under the Education for All Handicapped Children Act of 1975 (EHA), 20 U.S.C. § 1401 et seq. (1976 and Supp. III 1979), and the regulations promulgated thereunder, 34 C.F.R. § 300.1 et seq.[1], which insure a free and appropriate education to all handicapped students and establish extensive due process protections in order to guarantee equitable, expedient provisions of the mandated educational services. 20 U.S.C. § 1415. Plaintiffs assert that defendants have failed to propose an appropriate placement in direct violation of this Act and have refused to allow plaintiffs to propose their own special education placement even though the overwhelming weight of expert opinion indicates that the only appropriate program for Carlotta in the Washington, D.C. metropolitan area is the one suggested by her parents. Instead, the defendants have proposed placement in a program for seriously physically handicapped and profoundly retarded children, although Carlotta has no physical handicaps that adversely affect her educational performance and does not even require physical therapy.

Plaintiffs' second claim is under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (Supp. III 1979) and the federal regulations promulgated thereunder, 34 C.F.R. § 104.1 et seq. (1980), which incorporate many of the same procedural and substantive rights as are found in the EHA. Plaintiffs contend that defendants' obligation to provide appropriate placement under this Act is inescapable. The regulations state:

A recipient that operates a public elementary or secondary education program shall provide a free appropriate public education to each qualified handicapped person who is in the recipient's jurisdiction, regardless of the nature or severity of the person's handicap. 34 C.F.R. § 104.33(a) (1980).

The regulations further state:

A recipient may place a handicapped person in or refer such person to a program other than the one that it operates as its means of carrying out the requirements of this subpart. 34 C.F.R. § 104.33(b)(3) (1980).

Plaintiffs argue that defendants have violated their right to notice of proposed action and right to tuition for private schools, as delineated in "The Plan for the Education of Handicapped and Exceptional Children in the District of Columbia" (the "Plan"), approved on December 6, 1977, by Judge Joseph Waddy pursuant to his continuing jurisdiction in *Mills v. Board of Education of District of Columbia*, 348 F.Supp. 866 (D.D.C.1972).[2]

Lastly, plaintiffs assert that the defendants have violated the Rules of the District of Columbia Board of Education regarding plaintiffs' rights to special education. Rule 450.1 provides for "an adequate, publically-supported education for all students, including handicapped students for whom the regular program of instruction is inadequate." Rule 457.1 instructs:

Students who are otherwise eligible for admission to the Public Schools of the

---

1. 45 C.F.R. § 121a.1 *et seq.* (1980) has been redesignated as 34 C.F.R. § 300.1 *et seq.* as of November 21, 1980. All citations in this opinion refer to the new sections. The subsection numbers have not been changed (*e. g.*, 45 C.F.R. § 121a.300 is now 34 C.F.R. § 300.300).

2. *See* The Plan at 33–34 and 28.

District of Columbia, who meet all of the eligibility requirements set forth in Section 452 of this chapter, and for whom no adequate educational program is available in the Public Schools, shall be eligible for placement in a private facility by the Division of Special Education.

Rule 457.2 states:

The Public Schools shall pay the cost of tuition for education and related services for all students placed in private facilities by the Division of Special Education.

Plaintiffs also claim they are aggrieved by the Board of Education rules restricting Hearing Officers from considering relevant evidence about alternatives not presented by the defendants and from ordering the specific placement at Christ Church which they request.[3] Plaintiffs state that on three separate occasions they attempted to address the issue of their suggested placement at due process hearings and, on each occasion, they have been informed that, because of these Rules, they could not even mention the school's name. Therefore, plaintiffs assert that Board of Education Rules 456.10 *et seq.*, are contrary to 20 U.S.C. § 1415 (1976), 34 C.F.R. §§ 300.506 and 402(b), 34 C.F.R. § 104.33(c)(4) (1980), 42 U.S.C. § 1983 (Supp. III 1979) and the Due Process Clause of the Fifth Amendment to the Constitution.

### DEFENDANTS' CONTENTIONS.

Defendants, on the other hand, assert that plaintiffs have failed to exhaust their administrative remedies, and thus are without standing to request that the court substitute its judgment for that of the Hearing Officer. Defendants argue that the Hearing Officer must first consider the appropriateness of the proposed public school placement before entertaining the question of defendants' responsibility for funding of a private school placement. They contend that this two-step process in no way violates Carlotta Davis' due process rights as

are guaranteed under the EHA, the Rehabilitation Act of 1973, the court's mandate in *Mills*, and the District of Columbia Board of Education Rules. Defendants point out that the court's jurisdiction to entertain plaintiffs' claims arises primarily from the grant of jurisdiction in the EHA, 20 U.S.C. § 1415(e)(2) which provides that any party aggrieved by the findings and decision made by a Hearing Officer may bring a civil action in this court. They claim that plaintiffs cannot be aggrieved since the hearing has not been completed, and that the court therefore lacks jurisdiction to hear plaintiffs' claims.

Defendants also challenge plaintiffs' claim under the Rehabilitation Act of 1973 and the Fifth Amendment as being premature. Defendants contend that all of the plaintiffs' claims are founded upon the assertion that defendants have failed to provide handicapped children with an appropriate educational placement while non-handicapped children have been so provided. Defendants note that the EHA provides the hearing mechanism for parties to make such a claim. Since plaintiffs have failed to exhaust the specific mechanism designed for that purpose, defendants argue, they have no basis to say that Carlotta Davis has been discriminated against. According to defendants, only when the placement they propose is deemed inappropriate, and when defendants fail to provide another placement which can be deemed appropriate, can it be said that the defendants have discriminated against this child.

In particular, defendants assert that the Hearing Officer's actions in refusing to hear plaintiffs' claims in the hearings of July 7, 1981, and August 24–31, 1981, were proper and that the Hearing Officer's interpretation of the hearing procedure was a correct one. The Hearing Officer refused to consider any evidence which the plaintiffs wished to present about the Christ

---

**3.** D.C. Bd. of Educ. Rule 456.10 states: "In cases where a hearing is held to challenge a proposed placement by the Division of Special Education, the hearing officer's conclusion shall address solely the issue of the adequacy of the proposed placement." Rules 456.12, 13 state, in essence, that if the Hearing Officer concludes that the school's proposed placement is not adequate, he or she must refer the matter back to the school district for another proposal.

Church school, and stated that he would do so only after a determination had been made concerning the adequacy of the defendants' proposal of the Sharpe school. This interpretation of the administrative process forms the basis for defendants' claim that this court lacks jurisdiction because of the plaintiffs' failure to exhaust administrative remedies. In other words, defendants argue that since plaintiffs refused to complete the hearing as it was administered, this court lacks jurisdiction until the plaintiffs return to that hearing process for a final decision.

## DISCUSSION

### 1. *Jurisdiction*

■ As set out in detail below, defendants misconceive the Hearing Officer's task. Plaintiffs' interruption of the due process hearing to seek relief from this court was proper, since completing an improperly administered hearing would have been a futile gesture. Under such circumstances, this court may take jurisdiction and does so despite the plaintiffs' failure to complete the administrative hearing procedure.[4]

### II. *Due Process Hearing*

■ The two-step decision-making process proposed by defendants is not based on a proper interpretation of the statutes, case law, or even regulations which create and implement the hearing procedure. Defendants would have the Hearing Officer first consider their proposed placement for Carlotta Davis at Sharpe Health Center, without any mention of Christ Church or any other alternative placement. Only if the Hearing Officer finds Sharpe to be inappropriate, would defendants allow the Hearing Officer to turn to the parents for information about alternatives.

The defendants' proposed placement should not be evaluated in a vacuum. It is simply not possible for the Hearing Officer to consider the appropriateness of the Sharpe School for Carlotta without measuring its adequacy as compared to all other possible programs available. The Hearing Officer, like any human decision maker, must naturally evaluate the defendants' proposal in reference to something. If the parents are not permitted to present information about schools other than the one proposed by the defendants, the Hearing Officer's only source for information about options to which the proposed placement might be compared would be his or her past experience from hearings for other children. No matter how vast that experience might be, it could not provide the same accurate information for evaluation of the possibilities available in Carlotta's case as would the evidence which plaintiffs wish to present. Even if the Hearing Officer were successful in keeping the narrow mental focus defendants would have him maintain, the quality of any decision made in such a manner would obviously be inferior. It is essential that the Hearing Officer have as full information as possible from all sources, to then apply his or her expertise in evaluation of each part of that information, and to then weigh the information accordingly in arriving at the final decision. Surely it is this process, and not the mental gyrations suggested by defendants, which was envisioned by the statutory scheme. The Education for All Handicapped Children Act, 20 U.S.C. § 1401 *et seq.* (1976 and Supp. III 1979), does not create the type of restricted hearing defendants claim it does. To the contrary, the hearing procedure is to be as open as possible to allow all parties to present evidence and to challenge the evidence presented.[5] Hearings under this section are designed to provide input by the parent and the child in the identification and classification process, and should not be

4. *Monahan v. State of Nebraska*, 491 F.Supp. 1074, 1086 (D.Neb.1980); *Armstrong v. Kline*, 476 F.Supp. 583, 602 (E.D.Pa.1979); *Loughran v. Flanders*, 470 F.Supp. 110, 112 (D.Conn.

1979). *See also Cox v. Brown*, 498 F.Supp. 823 (D.D.C.1980).

5. *See* 20 U.S.C. § 1415 (1976); 34 C.F.R. § 300.508.

in any way limited so as to reduce their meaningful participation.[6]

Secondly, the United States District Court for the District of Columbia, under its continuing jurisdiction in *Mills v. Board of Education of District of Columbia, supra,* approved "The Plan for the Education of Handicapped and Exceptional Children in the District of Columbia" (the "Plan") in 1977, which provided detailed guidelines and procedures for the type of hearings at issue.[7] This Plan certainly does not embrace the restricted type of hearing which defendants suggest.[8] Defendants' reliance upon paragraph 20 of the Hearing Procedures set out in the Plan is misguided.[9] Paragraph 20 states:

> In a case where a hearing is held to challenge a proposed placement, the hearing officer's conclusion shall address solely the issue of the adequacy of the proposed placement.

It is clear that the *Mills* court intended this paragraph to mean that the Hearing Officer shall address solely the issue of adequacy, rather than the issue of cost, for example, of the proposed placement, and not that the Hearing Officer was to address solely the single proposed placement.

Finally, the District of Columbia Board of Education Rules also fail to lend support to the proposition that due process hearings should be of the narrow scope defendants propose. No rule mandates that hearings be restricted.[10]

Rule 456.10 states:

In cases where a hearing is held to challenge a proposed placement by the Division of Special Education, the hearing officer's conclusion shall address solely the issue of the adequacy of the proposed placement.

Since this Rule is essentially the same as Paragraph 20 of the *Mills* Plan noted above, the same analysis applies. Rule 456.13 provides:

> In no instance shall a hearing officer direct a placement in any particular program or private facility.

This Rule means that the Hearing Officer may only approve or disapprove the defendants' proposed placement, but not that the information upon which that decision is based must be in any way limited. The Hearing Officer may not mandate that the placement be at a school other than the one proposed by the defendant, but he should certainly hear the parents' evidence concerning any and all alternatives in order to evaluate the adequacy of the defendants' proposal.

Defendants strenuously assert that it is the school authorities' responsibility, and not that of the parents, to find the most appropriate placement for this child. The parents may, of course, voluntarily assume that responsibility by choosing and paying for their own school. Defendants are indeed most probably the more qualified experts, and the proposal they suggest to the Hearing Officer should be evaluated in that light. In other words, the Hearing Officer should give the defendants' proposed place-

---

6. *See Mrs. A.J. v. Special School District No. 1,* 478 F.Supp. 418, 431 (D.Minn.1979); *Lora v. Board of Education of the City of New York,* 456 F.Supp. 1211, 1227 (E.D.N.Y.1978).

7. The Plan at 35 (Due Process Rights and Procedures), 38 (Hearing Procedures).

8. The following provisions of the Plan illustrate that it was designed to create as open a hearing as possible:

   *3*
   The hearing officer will preside at the hearing and shall conduct the proceedings in a fair and impartial manner to the end that all the parties involved in the hearing have an opportunity to present their evidence;
   *9*

The hearing shall not be conducted according to the strict rules of evidence, however, the hearing officer may exclude any evidence which is irrelevant or repetitive;

*11*
The hearing officer shall ensure that the hearing is conducted in an orderly manner and shall exclude a party or witness only for substantial obstruction of the hearing process.

9. The Plan at 41.

10. *See* D.C. Bd. of Educ. Rule 455 *et seq.* (Notice and Due Process), 456 *et seq.* (Hearing Procedures).

ment the deference that is due its presumed expertise in these matters. This is not to say, however, that the Hearing Officer may not consider the information the parents wish to present. Rather, the Hearing Officer should carefully evaluate all information presented—from both the schools and the parents—and weigh it according to its usefulness and possible biases. For example, in some cases, parents show less-than-acceptable motives for desiring placement of their child at one particular program rather than another. Hearing Officers must be alert for such instances and weigh the parents' assertions accordingly. In other cases, however, it is the school authorities who will not take the time and thoroughness required to make a proper inquiry, and only the parents' initiative and assertiveness will provide the expert evaluation essential to an informed decision. Clearly, the Hearing Officer should not defer to the school authorities' expertise when it remains unexercised, but instead should give substantial credence to any information the parents present. Judging from the limited record before this court, this seems to be the case with Carlotta Davis. Defendants concede that the numerous expert opinions provided by the plaintiffs formed the basis for their own evaluation of Carlotta. It would serve no purpose for the Hearing Officer not to give these opinions the weight they deserve merely because, in reality, it should have been the defendants' responsibility to find the most appropriate placement. The Hearing Officer's duty, and the very reason that his position exists, is to use all means at his disposal to assure that the defendants' proposed placement is appropriate. Examining the parents' alternative proposals is but one of the several means available for the Hearing Officer to assure that defendants have faithfully carried out their responsibility to find the most appropriate placement for Carlotta Davis. This is all the more necessary when defendants propose a solitary school for a decision devoid of choice.

In sum, the Hearing Officer should have accepted the information the plaintiffs wished to present about Sharpe, Christ Church or any other school. This information should have been considered as part of the evaluation of the appropriateness of the defendants' proposed placement at the Sharpe School. It is disputed whether the Hearing Officer in this case refused to consider the plaintiffs' information at all, or would have considered it after an initial determination of the appropriateness of the Sharpe proposal. Either course of action would have been improper. The Sharpe proposal cannot be properly evaluated without comparison to the program at Christ Church or to any other facility either plaintiffs or defendants propose as appropriate for Carlotta's unique requirements.

The Hearing Officer is not, however, empowered to do that which both parties suggest: address the issue of the defendants' financial responsibility for the parents' proposed school. Plaintiffs argue that the Hearing Officer should hear information about both Sharpe and Christ Church, including information about financial responsibility, and then place Carlotta in whichever program is more appropriate. Defendants, on the other hand, suggest that the Hearing Officer should first consider the Sharpe proposal, and if that placement were inappropriate for Carlotta, then consider whether defendants should be financially responsible for her placement at Christ Church.

Neither of these interpretations of the statutory scheme is correct. The sole consideration which the Hearing Officer may address is whether or not the proposed placement is appropriate for Carlotta, regardless of its cost or who should bear that cost.[11] If the defendants' proposal is not appropriate, the Hearing Officer may not decide that some other placement is, and then consider whether the defendants

11. The *Mills* Plan, as noted above, so states at Paragraph 20 of the Hearing Procedures. The Plan at 41.

should be financially responsible.[12] Rather, the Hearing Officer is restricted to refer the matter back to the school district so that it may make another proposal within twenty days.[13] In so doing, he should clearly state the reasons for considering the proposed placement not to be an appropriate one, and describe a program which would, in his opinion, be appropriate.[14]

In the instant case, if the Hearing Officer is persuaded by the plaintiffs' evidence concerning the Christ Church Child Center, and thereby finds the proposed Sharpe placement inappropriate, he is able to state that an appropriate placement would be Christ Church. He cannot, however, order the school district to place Carlotta there. Instead, he must refer the matter back to the defendants for another proposal. He may

not order the defendants to propose Christ Church, nor treat Christ Church as a proposal before him for which he must determine the financial responsibility until the school district has proposed that school.[15] If the Hearing Officer finds the Sharpe proposal an appropriate one (without having considered that the alternatives to Sharpe might be more expensive), but the plaintiffs still insist on Carlotta attending the Christ Church School, then the financial responsibility falls automatically on the parents (unless, of course, the Hearing Officer's determination of appropriateness is successfully appealed).[16] To say that the Hearing Officer may "determine financial responsibility" is a misstatement. He must determine appropriateness of the proposed placement regardless of financial considerations.[17] If the placement is appropriate,

12. D.C. Bd. of Educ. Rule 456.13 specifically provides that the Hearing Officer may not direct any placement other than the one proposed by the school district. See discussion of this Rule at Page 10–11 of this Opinion.

13. The Plan at 41. Paragraph 24 (Hearing Procedures) states:
    If the hearing officer concludes that the proposed placement is not adequate, the agency has twenty (20) days to propose another placement.
    D.C. Bd. of Educ. Rule 456.12 also provides this twenty-day period.

14. The Plan at 40. Paragraph 18 (Hearing Procedures) states:
    If the decision is to disapprove a proposed/denied identification, evaluation or placement, it should include a statement as to what is an adequate and appropriate assessment and/or educational program for the child. If the decision is to approve the proposed/denied identification, evaluation or placement in an educational program it should include a finding that a less restrictive environment could not adequately and appropriately serve the child's educational needs.

15. Plaintiffs fear that the administrative process in their case will become an endless cycle in which the school district proposes school after school, but refuses to propose Christ Church, while the Hearing Officer, in turn, finds each proposal unacceptable in light of plaintiffs' evidence about Christ Church. It is true that the statutory scheme fails to provide for such a contingency. It must be assumed, however, that the school district will act only in the best interest of the child, and not in bad faith or with overly zealous parsimony. It was envi-

sioned, no doubt, that the court would intervene in such circumstances. The case before this court is not presently in this posture. Plaintiffs may certainly seek relief from the court in the future, however, should they wish to allege bad faith on the part of the schools, resulting in abject futility of the administrative process.

16. 34 C.F.R. § 300.403(a) states in pertinent part:
    If a handicapped child has available a free appropriate public education and the parents choose to place the child in a private school or facility, the public agency is not required by this part to pay for the child's education at the private school or facility.

17. This court stated in *Cox v. Brown*, 498 F.Supp. 823, 830 (D.D.C.1980):
    Congress declared when it passed the Education of All Handicapped Children Act of 1975:
    It is the purpose of this Act to assure that all handicapped children have available to them ... a free appropriate public education which emphasizes special education and related services designed to meet their needs, to assure that the rights of handicapped children and their parents or guardians are protected, to assist States and localities to provide for the education of all handicapped children, and to assess and assure the effectiveness of efforts to educate handicapped children.
    Education of All Handicapped Children Act of 1975, Pub. L. 91–230 § 601 *as amended by* Pub. L. 940142, § 3(a), reprinted at 20 U.S.C. § 1401 (1976) (Historical Note).
    In focusing attention on the particular problems of those who suffer from physical,

whatever its cost, defendants automatically bear financial responsibility. The only determination the Hearing Officer ever makes is one of adequacy; the financial burden falls depending upon that determination.

### III. *Placement*

█ Although the parties have misunderstood the Hearing Officer's role, the plaintiffs misconstrue the role of this court when they request it to immediately place Carlotta at the Christ Church program. It is accurate that the plaintiffs were not provided the full and open hearing by the Hearing Officer which they should have received. As such, their appeal to this court for relief was proper. The hearing at this court, however, did not address the issue of whether the Sharpe School was appropriate for Carlotta and, in no way, enlarged the Hearing Officer's proceedings. In that abyss the court cannot make that imperative determination merely on the basis of the reports attached to plaintiffs' pleadings, not even having heard defendants' experts as to how Sharpe contrasts with Christ Church and what benefits Sharpe offers Carlotta which may be deficient in the Christ Church program. There is no need for the court to now usurp the Hearing Officer's role, since a full hearing on appropriateness must still take place, and the Hearing Officer's expertise in such matters—given the guidance in this opinion—will hopefully provide the most just result for all concerned.

Plaintiffs, however, are in a particularly difficult situation due to the relentless pressures of time: the school year began at the Sharpe School on the day of the hearing before this court, and at the Christ Church School one day later. Even if there is some debate over the appropriateness of Sharpe or Christ Church, there is no question that Carlotta's entering either program a month late would be highly inappropriate, and even further disadvantage this handicapped child. A month lost in the life of a child is forever lost, an "eternity", while which type of education she should have received passes back and forth through examination and evaluation. This is not to say that the decision should be made without careful consideration, but only that deliberation must be quick, precise, and trustingly correct. For that purpose, on an abbreviated schedule, this case will be remanded to the defendants for continued administrative procedures, tailoring those procedures to the exigencies of this situation.

Accordingly, the parties will return to complete the hearing before the Hearing Officer, in the full form as described above, within five days of the date of this order. The only proposal the Hearing Officer may consider is the defendants' proposal of the Sharpe School program. In so doing, however, the Hearing Officer may also evaluate all evidence the plaintiffs wish to present concerning the Sharpe School *and* Christ Church or any other program which they feel is more appropriate. The Hearing Officer may not be swayed by considerations other than the appropriateness of the Sharpe program (vis-a-vis Christ Church and all other programs available), and in particular may not consider the fact that Christ Church is a privately-owned institution, while Sharpe is public. The only decision which the Hearing Officer may make is whether or not to approve the defendants' Sharpe proposal. Under no circumstances may the Hearing Officer order that Carlotta be placed in Christ Church. The Hearing Officer must submit his decision and findings no later than five days after the date of the hearing.[18]

mental, or emotional learning disabilities, this statement of intent directs a concept of public interest that includes equal treatment for handicapped children and provision of special educational services where needed. The expense that must be borne for this education ultimately by the taxpayers is consistent with the intent that the handicapped children be no less educated and no less sheltered with constitutional protection than those not in need of special services. . . . Unless reasonable appropriate alternatives are available the rights cannot be constricted by monetary limitations.

18. This accelerated hearing schedule should not impose too substantial a burden on the

If the Hearing Officer determines that the Sharpe Health Center is in fact the most appropriate place for Carlotta, and the plaintiffs still wish to contest that placement, then they have their right to an appeal from that determination to this court.[19] If, on the other hand, the Hearing Officer concludes that the Sharpe proposal is inappropriate, the usual procedure would be for him to return the case to the school district for a new proposal, which must be forthcoming in twenty days. In Carlotta's case, however, the school district has already been granted one extension of time after defendants admitted their untimely failure to make *any* proposal for Carlotta's placement within the specified time limits.

Should the Hearing Officer conclude that the Sharpe Health Center is not an appropriate placement, it would be disserving, indeed, clearly inappropriate, to return Carlotta's case back to the school district for yet another twenty-day wait. Defendants, therefore, will be given five days in which to make a second recommendation in the event that their Sharpe proposal is found by the Hearing Officer to be inappropriate. As provided by statute, either plaintiffs or defendants may appeal the Hearing Officer's decision concerning the Sharpe proposal.[20] Should the school district be unable to state an appropriate second proposal within the time specified, or if its proposal is one which plaintiffs feel indicates bad faith in order to avoid placing Carlotta in any particular program or at any private facility, the plaintiffs may seek injunctive relief from this court at such time.

It is, therefore, by the Court, this 23rd day of September, 1981

ORDERED that

1. Defendants' motion to dismiss for lack of jurisdiction be and it hereby is denied.

2. A declaratory judgment of the rights of plaintiffs Carlotta Davis, William and Amy Davis is granted, as set out in this Opinion.

3. Plaintiffs' prayer for injunctive relief by immediately placing Carlotta Davis at the Christ Church Child Center without further administrative process is denied without prejudice to plaintiffs seeking said relief, if appropriate, following completion of said administrative process, as detailed in this opinion.

The case is remanded to the Hearing Officer for a hearing and determination not inconsistent with this opinion.

Should the parties be unable to reach an agreement concerning attorneys' fees, plaintiffs may seek relief with accompanying detail, verification and points and authorities upon the requested reopening of this case for such purpose.

Hearing Officer, since part of the hearing has already been completed.

**19.** *See* 20 U.S.C. § 1415(e) (1976); 34 C.F.R. § 300.511.

