**Carlotta DAVIS, et al., Plaintiffs,**

v.

**DISTRICT OF COLUMBIA BOARD OF EDUCATION, et al., Defendants.**

**Civ. A. No. 81–2069.**

United States District Court, District of Columbia.

Jan. 21, 1982.

Michael J. Eig, Eig & Smith, Washington, D. C., for plaintiffs.

Julia L. Sayles, Asst. Corp. Counsel, District of Columbia, Washington, D. C., for defendants.

## MEMORANDUM OPINION AND ORDER

JOYCE HENS GREEN, District Judge.

This action was decided on its merits by this Court in a Memorandum Opinion and Order filed on September 23, 1981, (reported at 522 F.Supp. 1102 (1981) (and hereinafter referred to as Order of September 23, 1981). Plaintiffs thereafter filed a motion captioned "Plaintiffs' Motion for Reconsideration," by which plaintiffs request this court to "clarify or restate" certain portions of its decision. Plaintiffs' Motion for Reconsideration at 1.

In particular, plaintiffs take issue with the determination that, "The Hearing Officer is not, however, empowered to do that which both parties suggest: address the issue of the defendants' financial responsibility for the parents' proposed school" (*Order of September 23, 1981,* at 12, 522 F.Supp. at 1109) and that, "To say that the Hearing Officer may 'determine financial responsibility' is a misstatement." *Id.* at 14, 522 F.Supp. at 1110. Plaintiffs contend that these two statements "directly conflict with federal law and the expressed intent of Congress." Plaintiffs' Motion for Reconsideration at 1.

Plaintiffs do not intimate the particular Federal Rule of Civil Procedure upon which they base their motion. It is unclear whether plaintiffs request alteration or amendment of the judgment under Fed.R.Civ.P. 59(e) or amendment of the conclu-sions of law under Fed.R.Civ.P. 52(b).[1] Since the time limitations for the filing of either type of motion are the same, plaintiffs did file in a timely manner. It need not be decided which form of relief plaintiffs seek, *Browder v. Director, Department of Corrections of Illinois,* 434 U.S. 257, 261–62 n.5, 98 S.Ct. 556, 559, 54 L.Ed.2d 521 (1977); 6A Moore's Federal Practice ¶ 59.-04[6] (2d ed. 1973); 9 Moore's Federal Practice ¶ 204.12[1], at 4–67 (2d ed. 1980), since this Court declines to modify in any way its Order of September 23, 1981. In the interests of justice, however, the court will herein reiterate—and hopefully thereby clarify—its decision and address specifically the arguments raised in the plaintiffs' motion.

Plaintiffs apparently view the placement process as follows. The school district evaluates the child and proposes a placement. If the parents or guardians disagree with the school district's proposal for any reason, they are entitled to a hearing before an impartial Hearing Officer. The Hearing Officer, plaintiffs contend, should hear all of the evidence that both the school district and the parents wish to present about either the proposed school or any other alternatives, and then decide which of the various placements discussed is appropriate, if any. If the school which the parents propose happens to be a private facility, the Hearing Officer then considers who should bear the financial responsibility. It is not clear whether plaintiffs wish such financial considerations to be part of the evaluation of the appropriateness of the parents' proposed school, or some sort of a separate determination.

 This interpretation of the placement process is not correct. The Hearing Officer's role is not to hear all proposals from the school district, or the parents and consider any of his own, choose the most appropriate one, and then determine who should bear financial responsibility. Instead, the only proposal which is properly before the Hearing Officer is that made by the school district. It is the school district's

---

1. It does not appear that plaintiffs request relief under Fed.R.Civ.P. 60. *See e.g., Butler v.* *Pearson,* 204 U.S.App.D.C. 254, 636 F.2d 526 (1980).

burden of proof to show that its proposal is indeed an appropriate one. The parents may present any information they wish about the proposed placement and any other alternative, as discussed in detail in the Order of September 23, 1981. If the Hearing Officer determines that the school district's proposed placement is not appropriate for the child, the Hearing Officer must remand the matter to the school district with a recommendation of an appropriate program or placement. It is the school district's responsibility to make a second proposal within twenty days.

This is not new law created by this Court, but rather is the placement process mandated by the Education for All Handicapped Children Act of 1975 (EHA), 20 U.S.C. § 1401 et seq. (1976 and Supp. III 1979), the regulations promulgated thereunder, 34 C.F.R. § 300.1 et seq., the Rehabilitation Act of 1973, 29 U.S.C. § 794 (Supp. III 1979), its regulations, 34 C.F.R. § 104.1 et seq. (1980), and the decree in Mills v. Board of Education of District of Columbia, 348 F.Supp. 866 (D.D.C.1972), including "The Plan for the Education of Handicapped and Exceptional Children in the District of Columbia" (the "Plan") approved in 1977.

Plaintiffs wish to replace the twenty-day reconsideration period provided by this scheme with an immediate decision by the Hearing Officer. Plaintiffs would have the Hearing Officer take matters into his own hands and, immediately upon finding the school district's initial proposal inappropriate, place the child in whichever program he considers appropriate. If that program happens to be a private facility, then presumably the Hearing Officer would thereby "determine financial responsibility." This may seem to be an expedient remedial step to arrive quickly at some type of placement decision, and the court can readily empathize with frustration exacerbated by bureaucratic delay. Nonetheless, it would be an improper erosion of the school district's responsibility under the applicable statutes and the Mills decree, as well as an unnecessary temptation for the District of Columbia Public Schools to abdicate that responsibility knowing that, if a hearing is held, the Hearing Officer will do the job for them.

If the Hearing Officer finds a particular placement proposed by the schools to be inappropriate in light of information about some private facility, he may, and indeed, should, recommend that an appropriate placement would be that private facility. In this way he might strongly influence the school authorities to adopt that facility as their proposed placement during their 20-day reconsideration period. He cannot, however, make that placement himself, and therefore cannot "determine financial responsibility" outright. The only matter the Hearing Officer determines is the appropriateness of the educational placement offered by the school district. The question of who must bear the financial responsibility for a private school placement turns upon the appropriateness of that placement and the inappropriateness of the alternative public school placements proposed. The financial responsibility is always the school district's except when it offers an appropriate public, or even private, school education to the child which the parents choose not to accept, in which case it is the parents who must bear the cost of their chosen school. It is evident that a financial responsibility resolution turns solely on the appropriateness of the education offered by the school authorities; it is not some sort of separate determination.

This interpretation of the placement process is fully supported by the statutory scheme, the Mills plan, and the school board rules, as set out in the Order of September 23, 1981, which need not be repeated here. The documents to which plaintiffs point in their instant motion also support this interpretation, as will be discussed in detail below.

Plaintiffs' motion, however, reveals a possible cause of their confusion. They are concerned that, if the Hearing Officer is not given the power to determine financial responsibility and to mandate placement in a program other than the one proposed by the school district, the placement process for each child will become an endless cycle

of proposals repeatedly rejected at hearings. The controversy presented to the Court in the instant matter was not in such a posture. The due process hearing at issue here was the first hearing in which a proposed placement for Carlotta Davis was challenged. Each of the statutes, regulations, *Mills* Plan provisions and school board rules cited in the Order of September 23, 1981 were construed in reference to a hearing in which the first proposal made by the school authorities was challenged. A ruling on the proper process to follow in different circumstances was explicitly reserved for another day. *Order of September 23, 1981* at 14 n.15, 522 F.Supp. at 1110 n.15. A wholly different case would have been before the Court had the school district's first proposal already been found inappropriate and, after the twenty-day period, the school district either failed to make a second proposal or had made one which the Hearing Officer would find inappropriate.[2] It is in such a case where plaintiffs' fears concerning an endless placement dispute would have been realized. In such circumstances, there are many options open for a court to fashion relief, should it choose to do so. The limitations placed on the Hearing Officer by the *Mills* Plan and the school board rules (upon which the decision in the instant case was specifically based) are directed at only the first hearing.[3] There is an assumption, perhaps, that one twenty-day period for re-evaluation of its position is all the school authorities, acting in good faith, will ever need. If this assumption is not borne out by reality, any number of solutions are available. For example, the *Mills* Plan might be supplemented by another provision concerning second-round hearings

which would grant hearing officers much broader powers after two determinations of inappropriateness of the school district's proposals. On the other hand, judicial resolution of such disputes on a case-by-case basis might prove more expedient. Or perhaps the procedure should be no different from the first hearing, and the school district should be given a chance to make a third proposal. In any event, the instant case did not purport to decide a controversy not before the Court, and plaintiffs should not err in believing that it did.[4] With this caveat in mind, examination of the arguments raised in plaintiffs' motion is called for.

Plaintiffs note that the Senate Report on the EHA states:

> If a parent contends that he or she has been forced, at that parent's own expense, to seek private schooling for the child because an appropriate program does not exist within the local educational agency responsible for the child's education and the local educational agency disagrees, that disagreement and the question of who remains financially responsible is a matter to which the due process procedures established under Section 614(5) applies.

S.Rep.No. 168, 94th Cong., 2d Sess., 32 (1975), U.S.Code Cong. & Admin.News 1978, pp. 1425, 1456. It is clear that when a parent contends that the public school education offered his or her child is not appropriate, a due process hearing is in order. The sole issue at that hearing, though, will be whether the parent's contention that "an appropriate program does not exist" in the public schools, as stated in the report above,

---

**2.** Yet another case in which the Hearing Officer's role and powers would be different is that where the school authorities have failed to make any proposal within the required time limits. A myriad of claims may be heard by the Hearing Officer. *See, e.g., Foster v. District of Columbia Board of Education*, 523 F.Supp. 1142, 1146 n.5 (1981).

**3.** Other limitations such as the parties' duty to maintain the status quo during the pendency of a placement dispute, may restrict overly creative remedial action. *See* 20 U.S.C. § 1415(e)(3)(1976); 34 C.F.R. § 300.513(a);

*Foster v. District of Columbia Board of Education, supra.*

**4.** Defendants' counsel seem to understand the limitations of the decision, since they state in their opposition to the instant motion that, "Parenthetically, the defendants are aware of the potential problems that might occur if the resulting new proposal was [sic] also found inappropriate." Defendants' Memorandum of Points and Authorities in Opposition to Plaintiff's [sic] Motion for Reconsideration at 2.

is correct and that therefore "he or she has been forced, at that parent's own expense, to seek private schooling for the child." In other words, the dispositive question is *appropriateness* of the public school alternatives. "The question of who remains financially responsible" depends, indeed falls, upon the determination of appropriateness.

■ Plaintiffs' reliance upon the regulations promulgated under the EHA, specifically 34 C.F.R. § 300.403, is similarly misguided. This regulation states:

(a) If a handicapped child has available free appropriate public education and the parents choose to place the child in a private school or facility, the public agency is not required by this part to pay for the child's education at the private school or facility. . . .

(b) Disagreements between a parent and a public agency regarding the availability of a program appropriate for the child, and the question of financial responsibility, are subject to the due process procedures under . . . [§§ 300.500–300.514] . . . of Subpart E.

The issue to be determined by the Hearing Officer in the due process procedures referred to is, by the terms of this regulation, "the availability of a program appropriate for the child." "[T]he question of financial responsibility," as explicitly mentioned in this regulation, is not a determination separate from that of appropriateness, but one derivative of it. In other words, whether the defendants must pay for any given placement depends upon the unavailability of a public school placement for the child, i.e., the lack of appropriateness. The Hearing Officer, therefore, must determine *appropriateness*, not financial responsibility.

■ Plaintiffs also point to the federal regulations promulgated pursuant to the Rehabilitation Act of 1973, 29 U.S.C. § 794 (Supp. III 1979), which provide many of the same substantive and procedural rights as the EHA. 34 C.F.R. § 104.33(c)(4)(1980) states:

If a recipient has made available, in conformance with the requirements of this section and § 104.34, a free appropriate public education to a handicapped person and the person's parents or guardian choose to place the person in a private school, the recipient is not required to pay for the person's education in the private school. Disagreements between a parent or guardian and a recipient regarding whether the recipient has made such a program available or otherwise regarding the question of financial responsibility are subject to the due process procedures of § 104.36.

The analysis of these regulations, contained as Appendix A of 34 C.F.R. § 104.1 *et seq.* (1980), states:

Paragraph (c) of § 104.33 sets forth the specific financial obligations of a recipient. If a recipient does not itself provide handicapped persons with the requisite services, it must assume the cost of any alternate placement. If, however, a recipient offers adequate services and if alternate placement is chosen by a student's parent or guardian, the recipient need not assume the cost of the outside services. (If the parent or guardian believes that his or her child cannot be suitably educated in the recipient's program, he or she may make use of the procedures established in § 104.36).

Again, is it not clear that the parent's contention "that his or her child cannot be suitably educated in the recipient's program" raises only the issue of appropriateness? If the recipient cannot provide an appropriate education in its program then "it must assume the cost of any alternative placement." The language here clearly states that the school *must* assume the financial responsibility when public school education is not appropriate, not that anyone ever determines financial responsibility. Only the appropriateness of the recipient's program is determined. The phrase "otherwise regarding the question of financial responsibility" refers, it must be assumed, to disputes such as those in which appropriateness has already been determined but where the school district has failed to pay. This single phrase cannot be taken to grant the Hearing Officer some far-reaching pow-

ers to determine financial responsibility regardless of appropriateness or in derogation of other procedural requirements such as the twenty-day period provided by the *Mills* Plan.

Finally, the plaintiffs rely upon two opinion letters from the federal agencies responsible for monitoring compliance with the EHA and the Rehabilitation Act of 1973. To the extent that these letters disregard the existence of the *Mills* Plan, which is controlling in this particular circuit and binding upon these particular defendants, the construction of the placement process they provide cannot be accorded any weight.

In sum, then, the holding of the Order of September 23, 1981 with which plaintiffs take issue shall stand unchanged. The Hearing Officer determines appropriateness, not financial responsibility, and he may not place a child directly into a program not proposed by the school authorities. None of the documents discussed herein, nor those discussed in the Order of September 23, 1981, are construed as precluding a different course of action for the Hearing Officer in different circumstances. The description of the Hearing Officer's role which has resulted from this case is limited to that in a hearing challenging the school district's first proposal. The discussion herein has not changed, in any way, the findings of fact or law made in this case in the September 23, 1981, opinion.

It is therefore, by the Court, this 21st day of January, 1982

ORDERED that plaintiffs' motion for reconsideration be and it hereby is denied.